## Case No. 5,952.

### HALL v. WARREN et al.

#### [2 McLean, 332.] 1

Circuit Court, D. Ohio. Dec. Term, 1840.

REVENUE LAWS — JURISDICTION OF THE DISTRICT COURT—PLEADING — DUTIES AND LIABILITIES OF THE OFFICER MAKING SEIZURE — MEASURE OF DAMAGES.

1. It is the duty of an officer of the customs, on making a seizure of goods, for having been imported in violation of the revenue laws, to institute proceedings in rem in the district court.

2. The district court has exclusive jurisdiction of forfeitures.

3. Whether the seizure has been rightful or tortious, cannot be ascertained until the matter has been adjudged by that court.

4. If the person making the seizure refuse to proceed in the district court, on application to the court by the owner, he will be compelled to do so, or return the goods.

5. The pendency of the proceedings in rem may be pleaded in abatement, to an action of trespass against the officer.

6. Should the goods be adjudged to be returned by the court, and a certificate of reasonable cause refused, it is final.

7. There can be no justification of the act of seizure, except on a judgment of condemnation, or a certificate of reasonable cause.

8. The officer making the seizure should examine the goods before it is made, and not make it unless there be reasonable cause. Where goods are taken from the possession of the owner, and detained, without reasonable cause, the officer is liable to damages to the full extent of the injury.

9. The circumstances may be proved in mitigation of damages, but not to excuse or justify the seizure.

10. Having possession of the goods, and exercising acts of ownership over them, the plaintiff may sue for a trespass on them in his own name.

At law.

Wright & Fox, for plaintiff.
Mr. Hamer, for defendants.

OPINION OF THE COURT. This is an action of trespass brought by the plaintiff against the defendants for entering his store, in Cincinnati, by force, and removing therefrom, &c., a large amount of merchandize. The defendants pleaded the general issue. They, also, pleaded specially, that the said goods were brought from some foreign port to the said defendants unknown; and that the defendant, Warren, being an officer of the customs, suspected said goods had been unladen and delivered in the vessel in which they had been brought to the port of Cincinnati, without any permit or license from

1 [Reported by Hon. John McLean, Circuit Justice.]

the collector, or any of the competent officers of the customs. And that the said goods did not correspond with the entry thereof, at the custom house; but were entered at a sum less than the actual costs thereof, with a design to evade the duties, &c. And that the said Warren, calling to his assistance the other defendants, who were officers of the police, &c., seized the goods and removed them, as he had a right to do. A notice was also annexed to the general issue stating the facts, substantially, as set out in the special pleas. The plaintiff demurred to the special pleas. And the question arising on the demurrer, must be first considered by the court.

Where a seizure of merchandize is made on suspicion of its having been illegally imported, it is the duty of the officer making the seizure to institute proceedings in rem in the district court, or if the suspicion should prove to be unfounded to return the goods to the owner. By the act of 24th September, 1789 [1 Stat. 73], exclusive original jurisdiction is given to the district courts in all civil causes of admiralty and maritime jurisdiction, including seizures under laws of import, &c. And if the officer making the seizure shall refuse to institute the proper proceedings, on application of the aggrieved party, the court will compel him to proceed to adjudication, or to abandon the seizure. The Ann, 9 Cranch [13 U. S.] 289. This is not a case where the goods have been returned. The pleadings forbid such a supposition. If the goods were imported in violation of law, they are liable to be forfeited; and the district court only can enforce this forfeiture. And it is in view of this result that the proceeding against the goods is required. Whether the seizure has been lawful or not cannot be known or ascertained, until the district court shall have adjudicated on the subject. And in the case of Galston v. Hoyt, 3 Wheat. [16 U. S.] 246, the court remark, "the pendency of the suit in rem ..ould be a good plea in abatement, or a temporary bar of the action, for it would establish that no good cause of action then existed. If the action be commenced after a decree of condemnation, or after an acquittal, and there be a certificate of reasonable cause of seizure, then in the former case by the general law, and in the latter case by the special enactment of the statute of the 25th April, 1810, c. 64, § 1, the decree and certificate are each good bars to the action. But if there be a decree of acquittal and a denial of such certificate, then the seizure is established conclusively to be tortious; and the party is entitled to his full damages for the injury." That the certificate of condemnation, as also the certificate of acquittal is equally conclusive as to the character of the seizure is clearly established by the authorities. Wilkins v. Despard, 5 Term R. 112, 117; Scott v. Shearman, 2 W. Bl. 977; Henshaw v. Pleasance, Id. 1174; Geyer v. Aguilar, 7 Term R. 681; Slocum v. Mayberry. 2 Wheat. [15 U. S.] 1; The Apollon, 9 Wheat. [22 U. S.] 362. The

pleas do not state whether the proceeding in rem has been instituted, is pending, or has been terminated. And as the district court is the only court that has jurisdiction to adjudicate on the forfeiture, it clearly follows that until this adjudication is made, or a certificate of reasonable cause has been allowed, no plea of justification can be sustained. And this imposes no hardship on the officer making the seizure. He is not liable, during the pendency of the proceedings against the goods, to enforce a forfeiture. But his justification must alone rest on the decision of the district court. And the pleas, in this respect, are, therefore, fatally defective. Without reference to the proceeding in rem, they set up a justification for the seizure, by alledging grounds of suspicion. And whether there were sufficient grounds or not this court cannot try nor determine, but the district court.

In defence, it is insisted that if the goods had been returned on examination, there being found no sufficient grounds to detain them, the grounds of suspicion may be pleaded as is done in this case. In the case supposed, it may be admitted that the grounds of suspicion might be given in evidence in mitigation of damages, but they could afford no justification. It is very clear they could not be pleaded as such. The demurrers to the pleas are sustained. The jury being impanneled, the plaintiff proved that he occupied a store house on Pearl street, Cincinnati, in the summer of 1839; and that he had from fifty to sixty thousand dollars worth of worsted and other goods. That Warren, accompanied by the other defendants, came to his store and seized the goods, as having been brought into the country in violation of the revenue laws. The plaintiff denied the charge, and proposed, in the presence of several merchants, to unpack his cases and to exhibit all his goods for examination; alledging that on every article of goods chargeable with duty the duty had been paid, and he had evidence of the payment. And he offered to exhibit his papers and to procure the necessary assistance to open and examine his cases. But the defendant, Warren, declined all his propositions; said that he knew his duty and should execute it. It was, also, proved that several merchants present advised the defendant, Warren, to have the goods examined, and admonished him that it was his duty to examine them. But he rejected their advice. Several of them proposed then to become the surety of the plaintiff to deliver the goods in the precise condition they then were the next day. But this proposition was also rejected, and Warren, the defendant, retained the possession of them through the night, in the storehouse, by his agents, and the next day removed them to a place of deposit where they were retained until the order for their restitution was made by the district court.

The plaintiff, also, offered evidence conducing to prove that from the time the goods were thus taken, until they were restored,

they had declined in price from twenty three to twenty five per cent. And that he was obliged to dispose of them at this or a greater loss. He, also, showed the expenses to which he was subjected, from previous engagements, of clerk hire, house rent, insurance, &c. And, also, the expense in attending to the suit in the district court, and in prosecuting the present suit, with other items for moneys paid on the return of the goods, drayage, examiners, &c., &c. The plaintiff, also, proved that the warrant, under which Warren acted in making the seizure, was obtained from a justice of the peace, on his own application and oath. And that he took possession both of the warrant and affidavit. The record of the proceedings in rem, in the district court, was given in evidence by the plaintiff, which showed that the return of the goods had been adjudged, and a certificate of reasonable cause for the seizure denied by the court.

It appeared, also, in evidence, that the plaintiff was a citizen of England, and a stranger in Cincinnati, having but recently commenced business in that city. That he had made a very favorable impression upon the community, as a man of high and correct principles. It was admitted that the defendant, Warren, was the surveyor of the port, at Cincinnati, and that on him devolved the duty to see that the revenue laws were not violated. And in his defence, he first offered a letter received from the secretary of the treasury, inclosing extracts from an anonymous letter, purporting to have been written at Philadelphia, apprising him of contemplated frauds upon the revenue; and particularly informing him that a certain manufacturing house in Leeds, England, had made arrangements to export into this country large amounts of goods without paying the duties; and it was suggested that an importation had been made from the above house to Cincinnati, &c. This evidence the court remarked could not be received, either in excuse or justification of the defendant. But that it might be read for the single purpose of showing that the seizure had not been made from mere wantonness by the defendant; and that the jury might consider it, in connection with the claim of the plaintiff, for vindictive damages. That had this ground been abandoned by the plaintiff's counsel, the evidence would have been rejected.

The defendant, also, proved a conversation he had with one of the witnesses shortly before the seizure, respecting frauds upon the revenue, and in which he was advised by the witness to look into the establishment of the plaintiff. And the court held that for the purpose of rebutting malice or any other improper motive in the proceeding, this might be received in evidence. That under this head the object was to show, by the defendant, that however illegal his acts may have been, they were prompted by an honest motive in the discharge of his duty. And evidence was offered to prove that several of the other defendants were peace officers, and that they accompanied the defendant, at his request, with the view of preserving the peace. But the court rejected the evidence, saying that, in that transaction, as aiding and assisting the defendant, Warren, they must be considered as acting as citizens and not in the official stations which they might ordinarily fill in society. In his answer to the libel, filed by the district attorney, in the district court, the plaintiff stated the goods to belong to a certain firm of which he was one of the partners; and as this action is not brought in the name of the partnership, it was contended that the action could not be sustained. But the court held that having the possession of the goods and exercising acts of ownership over them, the plaintiff might well sue in his own name. And that in addition to this consideration, it appeared that, by the district court, the goods were adjudged to belong to the plaintiff; and they were ordered to be delivered to him as the rightful owner.

In the argument before the jury it was contended that, however illegally the defendant, Warren, may have acted in making the seizure, the other defendants, being citizens and having been called by him as an officer of the government to assist him in the performance of his duties, they cannot be held responsible for his errors. The arguments being closed, the court charged the jury that they had the right, as the evidence might require, to find any one or more of the defendants guilty or not guilty; and to assess, against him or them, the damages which the plaintiff has sustained by the seizure complained of. That the officer making the seizure had a right to call upon citizens to assist him in making it, and they are bound, under certain penalties, to render him assistance. But this affords to them no justification if the proceeding of the officer be illegal. That their justification must depend upon the same ground as that of the officer making the seizure. And that, as in this case, the proper tribunal having decided the goods were not liable to seizure, and that there was no reasonable cause to authorize the proceeding by the officer, the other defendants could have no ground of justification. But the jury were instructed it would be for them to determine, from the evidence, whether there was such a participation in the act of seizure, and the subsequent removal of the goods by the defendants, as would make them responsible for damages. The fact of their being present, as the friends of the officer, unless they aided and assisted him, or gave their advice and countenance to the trespass, they are not liable. They should not be found guilty unless there was such a participation on their part, if not by laying hold of the goods, by their presence and encouragement, as to have influenced, in some degree, the commission of the trespass. That, as regards Warren, his duties are important to the pub-

lic and to individuals, as the proceedings in this case show; and that they should be discharged with a due regard to private as well as to public rights. In so important a trust the action of the officer should always be governed by a sound discretion; and he should always solicit the best lights on the subject within his power. That in entering the store of the plaintiff, after having made known his object, he should have proceeded, as the law requires, to examine the goods to ascertain whether the revenue laws had been violated. That the proposed co-operation of the plaintiff, to have his boxes opened and every piece of his goods examined, without delay, took from the defendant, Warren, every plausible pretext for removing them. It appears, in fact, that a large part of the goods were not dutiable; but they, as well as those on which the duties had been paid, were seized, without examination, and removed, by the defendant. The plaintiff, too, offered to produce evidence of the payment of the duties, and that the importation of the goods, as well in landing as in the invoices, was strictly in conformity to law. This conduct, on the part of the plaintiff, should have been met by the officer with a correspondent course of action on his part, which would have brought the matter to a speedy determination. But, it seems from the evidence, that the defendant, so far from adopting this course, recommended by public policy, and a sense of justice to the government and to the individual, abruptly and insultingly rejected it. He asked no advice from the plaintiff or his friends, he said, and tauntingly observed, in the performance of his duties, would not be governed by their counsel. This would not have been objectionable, if the defendant had been careful to understand what his duties were, before he attempted to execute them. The counsel for the plaintiff insist, that he has not only shown an ignorance of the law under which he acted, but a wantonness which should subject him to exemplary damages. This, the court remarked, they would leave for the consideration and determination of the jury.

That the plaintiff is entitled to damages, which shall compensate him for the injury he received, by reason of the trespass, is clear. In ascertaining the amount of the damages the court instructed the jury that they should take into their consideration the depreciation of the goods, the insurance on them, store rent, (having had to pay rent and insurance,) also, clerk hire, under permanent agreements; the expense of defending the goods in the proceedings before the district court; and, also, in prosecuting this suit for damages; together with expenses paid by him in drayage, &c., on the return of the goods. That no damages could be recovered by the plaintiff, except those shown to have been incurred, prior to the commencement of the suit. The jury found for the plaintiff and assessed his damages at $15.999 95. Judgment.