## HAMMEL v. LITTLE.

### No. 6648.

United States Court of Appeals for the District of Columbia.

Argued Nov. 11, 1936.

Decided Dec. 14, 1936.

Alfred M. Schwartz and Maxwell A. Ostrow, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and John W. Fihelly, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, GRONER, and STEPHENS, JJ.

GRONER, J.

This is an appeal by Louis J. Hammel, plaintiff below, from a judgment upon a verdict directed by the trial court in favor of George M. Little, defendant below.

The parties will be referred to as they were designated below.

The original action was brought against Little and William R. Blandford, but Blandford having died before trial, the action was dismissed as to him. Blandford was at the time in question Deputy Prohibition Administrator for the District of Columbia; Little, a lieutenant of the Metropolitan Police Department.

In August, 1932, on the affidavit of another prohibition agent a search warrant was issued by the United States Commissioner directed to Little as Federal Prohibition Agent and commanding him to enter and search the premises of Hammel in the city of Washington and seize all intoxicating liquor found there. Little, accompanied by Blandford and certain prohibition investigators and agents, executed the warrant on August 30th and seized a considerable quantity of beer and wine, believing the same to be nontax-paid liquor under the applicable provisions of the revenue laws. They likewise seized under R. S. § 3453 (26 U.S.C.A. §§ 1620(a), 1621) certain personal property owned and used by plaintiff in conducting a bar and restaurant business in the premises. Subsequently a criminal prosecution was instituted by the United States against Hammel and two or three others, in which they were charged with the unlawful possession of intoxicating liquor and with the unlawful maintenance of a common nuisance under the Prohibition Act (27 U.S.C.A.). In October, 1932, Hammel and the others

were found not guilty upon each count of the information, and three days thereafter all the seized property was returned to Hammel, no libel, information, or other proceeding for the forfeiture of the property having been at any time filed or begun by the United States.

In his declaration Hammel charged the defendants Blandford and Little with trespass to personal property worth $16,000, in that the same, while the property of the plaintiff and located in his place of business, was seized and taken possession of and carried away by the defendants and withheld from the plaintiff for a period of six weeks—when the property was returned. Blandford and Little filed a joint plea setting out at great length the facts on which they claimed entire justification for the seizure. There was a demurrer to the plea which was overruled, and the case (against Little) was then tried to a jury, which by the direction of the court found a verdict for the defendant.

Section 3453 of the Revised Statutes (title 26 U.S.C.A. § 1185, see 26 U.S.C.A. §§ 1620(a), 1621) provides as follows: "All goods, wares, merchandise, articles, or objects, on which taxes are imposed, which shall be found in the possession, or custody, or within the control of any person, for the purpose of being sold or removed by him in fraud of the internal-revenue laws, or with design to avoid payment of said taxes, may be seized by the collector or deputy collector of the proper district, or by such other collector or deputy collector as may be specially authorized by the Commissioner of Internal Revenue for that purpose, and shall be forfeited to the United States. And all raw materials found in the possession of any person intending to manufacture the same into articles of a kind subject to tax for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of said tax; and all tools, implements, instruments, and personal property whatsoever, in the place or building, or within any yard or inclosure where such articles or raw materials are found, may also be seized by any collector

or deputy collector, as aforesaid, and shall be forfeited as aforesaid. The proceedings to enforce such forfeitures shall be in the nature of a proceeding in rem in the district court of the United States for the district where such seizure is made."

It is conceded on this appeal that by the provisions of the Prohibition Reorganization Act of 1930, 46 Stat. 427, and by the action of the Attorney General pursuant to that statute, Little was a prohibition officer and as such possessed the powers and authority and protection of a deputy collector of internal revenue. And plaintiff bases his appeal wholly upon the proposition that where property is seized by an officer of the United States as forfeited to the United States for violation of the revenue laws, but where the property is never proceeded against by the filing by the United States of forfeiture proceedings but is returned after the owner of the property in a criminal prosecution has been found not guilty of the charge—on which had he been convicted taxes would have been lawfully imposed and the property subject to forfeiture —the seizing officer is guilty of a trespass and it is no defense in an action brought for damages, in the absence of a certificate as provided by R.S. § 970 (28 U.S.C.A. § 818)[1], that he had probable cause for the seizure. Or, stated a little differently, plaintiff's position is that probable cause is never a justification for an illegal seizure unless it can be claimed by virtue of a certificate under the statute.

To sustain this position, counsel rely upon Gelston v. Hoyt, 3 Wheat. 246, 4 L.Ed. 381; The Apollon, 9 Wheat. 362, 6 L.Ed. 111; Averill v. Smith, 17 Wall. 82, 21 L.Ed. 613; The Conqueror, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937; and Hall v. Warren, 11 Fed.Cas. p. 275, No. 5,952, 2 McLean 332.

Gelston v. Hoyt involved the seizure of the ship American Eagle by the collector of the Port of New York, acting by the direction of the President of the United States, on the ground that she was fitted out and armed and about to leave to be employed in the service of a foreign state to commit hostilities upon the subjects of an-

---

[1] R.S. § 970 (28 U.S.C.A. § 818). When, in any prosecution commenced on account of the seizure of any vessel, goods, wares, or merchandise, made by any collector or other officer, under any act of Congress authorizing such seizure, judgment is rendered for the claimant, but it appears to the court that there was reasonable cause of seizure, the court shall cause a proper certificate thereof to be entered, and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution: Provided, That the vessel, goods, wares, or merchandise be, after judgment, forthwith returned to such claimant or his agent.

other foreign state with which the United States were then at peace. After the seizure the United States instituted proceedings to condemn the vessel, and in the trial the federal District Court ordered the ship restored to her owners *and denied a certificate of reasonable cause for the seizure.* Thereafter the owners brought an action in trespass against the seizing officers ·for taking and converting the ship to their own use, and the officers on their part undertook to defend on the ground that the ship was fitted out and intended to be used against a friendly nation, and also that they took possession under the instructions of the President. The court in which the action was pending refused to receive any evidence in justification of the trespass, and, only actual damages being claimed, left the cause to the jury to ascertain the amount. On appeal to the Supreme Court, it was held that the decision of the District Court in the condemnation proceeding against the government and in favor of the claimant of the vessel, together with a denial of a certificate of reasonable cause, was conclusive that no forfeiture was incurred and that the seizure was tortious and it was further held that these questions could not again be litigated in any other forum. Nothing else was decided except that the pleadings failed to show that the order of the President to the collector was in his capacity as commander-in-chief of the armed forces of the country but, to the contrary, that the seizure was made by the ordinary civil means—and inferentially, as we assume, that the seizure was not jure belli.

In the case of The Apollon there was a seizure by the collector of customs of a foreign vessel, while she was lying in a river within the acknowledged territories of Spain, for violation of the customs laws. After the seizure admiralty proceedings were instituted to subject the ship to the payment of tonnage duty and the cargo to forfeiture, but upon the hearing the District Court awarded a decree of restitution of ship and cargo *and refused to give a certificate of reasonable cause.* The claimant then sued the collector in the District Court and obtained a decree for damages, and on appeal to the Supreme Court the decree against the collector was affirmed. Mr. Justice Story, who wrote the opinion, reaffirmed the holding in Gelston v. Hoyt that a decree of acquittal in a proceeding in rem for forfeiture (without a certificate of reasonable cause) is conclusive evidence in every inquiry before every other tribunal that there was no cause for seizure. This ruling was decisive of the case, but the opinion discusses at great length the question of when probable cause may be urged as a defense in seizure cases or—as stated in the opinion —how far the existence of probable cause can be inquired into or constitutes matter of defense in an action of trespass growing out of a seizure. And upon the language used in this discussion plaintiff largely relies. Mr. Justice Story said (at page 372 of 9 Wheat., 6 L.Ed. 111): "Some obscurity arose at the argument, from not distinguishing between the effect of probable cause, in cases of capture jure belli, and the effect in cases of municipal seizures. In respect to the former, no principle is better settled in the law of prize, than the rule that probable cause will not merely excuse, but even, in some cases, justify a capture. If there be probable cause, the captors are entitled, as of right, to an exemption from damage ; and if the case be of strong and vehement suspicion, or requires further proof to entitle the claimant to restitution, the law of prize proceeds yet farther and gives the captors their costs and expenses in proceeding to adjudication. But the case is far different in respect to municipal seizures. Probable cause has never been supposed to excuse any seizure, except where some statute creates and defines the exemption from damages. The party who seizes, seizes at his peril; if condemnation follows, he is justified; if an acquittal, then he must respond in damages for the marine tort, unless he can shelter himself behind the protection of some statute."

As we have pointed out, the decision in the Apollon Case was made upon the theory that the in rem proceeding for the forfeiture of the vessel, having ended in favor of the claimant, with the denial of a certificate, was conclusive evidence "in every inquiry and every other tribunal" that there was no proper ground of seizure. And this holding was made to rest upon the conclusion, first, that a sentence of acquittal in rem binds all the world, and, second, that the seizing officer is not a stranger to that suit but is in fact a party to the suit entitled (as the law then was) to a share in the forfeiture and also to obtain a certificate of reasonable cause after acquittal, for his own protection. And so the sweeping language of the opinion which we have quoted above that probable cause is never an excuse for a seizure except where a statute makes it so and that whoever seizes the

property of another, seizes at his peril was doubtless meant to apply only to the case then under consideration by the court. If it be insisted that a broader import should be given to the language than this, it obviously should be considered with great deference and respect, but as not controlling. The words "seizures jure belli" used by the learned justice we take to mean by right of war, and "municipal seizures"— such as are made by virtue of some national or state law—for while the term "municipal" ordinarily refers to cities, it has a more extensive meaning in law literature, indicating the internal law of a state or nation as distinguished from international law. But for the proposition that in the case of municipal seizures probable cause is never an excuse no authority is cited in the Apollon Case except Gelston v. Hoyt, and as we read that case that question was neither involved nor discussed. It is, however, quite true that in Bostock v. Saunders, 2 Black., W. 912, 96 Eng.Rep. 539 (decided in 1772), which was an action of trespass against excise officers for breaking and entering the plaintiff's house in an unsuccessful effort to discover taxable or dutiable tea, Justice Blackstone, who sat in the case, in a concurring opinion said: "But still if the suspicion [of the seizing officers] though plausible, appears to be ill founded, the officer who, by a false or mistaken suggestion, has obtained such a license [warrant] from the commissioners, shall personally answer for the injury." And so also Justice De Gray, who sat, said: "The officer, then, acts at his own peril."

But some 13 years later, in the case of Cooper v. Booth, 170 Eng.Rep. 564, Lord Mansfield, sitting in the Court of King's Bench, reviewed Bostock v. Saunders and overruled it. Referring to that case, he said: "The great authority of those who gave the opinion has made us deliberate, and turn the matter over and over again in our thoughts; but after all the deliberation we have taken, we cannot bring ourselves to concur in it." And in disavowing the doctrine in Bostock v. Saunders Lord Mansfield said the legal execution of a legal warrant could not be a trespass and that the failure to find dutiable goods made no difference, for the act authorizing the procedure contemplated the issuance of warrants upon probable circumstances. And so he likened the situation to the arrest by a police officer, saying: "If a man by warrant is arrested for suspicion of felony, it is not necessary that he should be found guilty on his trial, in order to justify the arrest." This procedure, he said, "is agreeable to the principles of justice and policy; the officer is not merely a party * * * but he acts as a public officer in the execution of his duty; and if he acts bona fide, he ought to be saved."

And this, we think, is the doctrine adopted by most American courts. See Averill v. Smith, 17 Wall. 82, 21 L.Ed. 613; Agnew v. Haymes (C.C.A.) 141 F. 631; Harding v. Woodcock, 137 U.S. 43, 11 S. Ct. 6, 34 L.Ed. 580.

But we pass on to the further consideration of the cases cited by plaintiff. Averill v. Smith was an action in trespass against a collector of internal revenue for the seizure of 403 gallons of whisky. The seizure was made on the theory that the whisky was subject to duties and taxes, and forfeiture proceedings were begun. The court, however, rendered judgment in favor of claimant, and ordered that the property be discharged but adjudged and certified that there was probable cause for the seizure. The claimant then instituted a trespass action and obtained a verdict against the collector. This judgment the Supreme Court reversed, holding that the certificate of probable cause issued by the District Court in the condemnation proceeding was a complete defense because the statute made it so. There were some collateral questions in the case involving the failure of the collector to return the goods after the order of restoration, but the decision with relation to them has no bearing on the question we are discussing.

The Conqueror involved the seizure of a yacht. Vanderbilt, the owner, had purchased the yacht in England and brought her to New York where she was entered as a vessel with the collector of the port, and the bill of sale from the vendor to Vanderbilt was duly recorded in the collector's office. Shortly thereafter, upon the opinion of the Solicitor of the Treasury, she was seized as dutiable under the tariff laws. Vanderbilt, after the seizure, filed a libel in admiralty for possession of the yacht and for a decree awarding him possession and condemning the collector in damages and costs. In that proceeding the vessel was ordered restored to Vanderbilt, together with damages for the detention, and a certificate of reasonable cause for seizure was entered by the District Judge. On appeal the Supreme Court held that the vessel was not dutiable and affirmed the order of restitution. On the question of damages

the court held that R.S. § 970 (28 U.S.C.A. § 818) had no applicability because it was confined by its terms to a proceeding *begun by the United States* for forfeiture and that, since there was no such proceeding, there could be no certificate under that section, though there might be under R. S. § 989 (28 U.S.C.A. § 842), the effect of which is to transfer the liability from the officer to the government. There is no discussion of the question of reasonable cause, and apparently no evidence was offered on that subject. As we read the opinion, the seizure was admittedly tortious, and the case for that reason is not in point on the proposition we are discussing.

Hall v. Warren grew out of the seizure by customs officers of certain goods in a storehouse in the city of Cincinnati. The seizure was on the theory that the goods had been imported in violation of law and were subject to forfeiture. Upon the institution of proceedings in the District Court there was a decree of acquittal and a denial of a certificate of reasonable cause, and in the subsequent action for trespass against the officers it was held that the judgment of acquittal and the denial of the certificate of reasonable cause was final and that the owner of the goods was entitled to damages.

So, without unduly prolonging this opinion, but by way of summary, it may be said that the sum total of these cases is that in condemnation proceedings a certificate that there was reasonable cause of seizure is a bar to an action for trespass, but on the other hand, that a decree of restitution, accompanied by denial of a certificate, establishes the tortious act and entitles the owner of property to damages for injury. And this is true because in either case there is an adjudication by a court of competent jurisdiction on the merits.

But that is not this case. Here, as we have seen, the property was seized for violation of an internal revenue law and, upon the subsequent acquittal of the owner in a criminal proceeding, was immediately restored by direction of the United States Attorney. The action of that officer was doubtless in deference to the decision of the Supreme Court in Coffey v. United States, 116 U.S. 427, 6 S.Ct. 432, 29 L.Ed. 681, where it was held that Coffey's property could not be forfeited by proceedings in rem for violation of internal revenue laws when Coffey himself had been acquitted on a criminal charge of violating such laws. But we have here a case in which there has been no in rem proceeding for the forfei-ture of the seized property, no adjudication of the merits, and therefore no opportunity to the officer to obtain a certificate under the provisions of R. S. § 970 (28 U.S.C.A. § 818). But counsel insist, as we have seen, that the surrender was the equivalent in all respects of a decree of restitution in a proceeding of forfeiture and that without the certificate the officer is precluded from now making any defense, based either on reasonable cause or on actual violation of the law. We think this position cannot be sustained. As we have noticed, the cases upon which plaintiff relies all involved forfeiture proceedings and the conclusion reached in them that the decisions in the forfeiture proceedings were final turned on the holding that the officer was a party interested in the proceedings, and that the decree in rem ascertained definitively the fact that the seizure was tortious. Gelston v. Hoyt, 3 Wheat. 246, at pages 318, 319, 4 L.Ed. 381. But here there has been no proceeding of condemnation and therefore no finding by any court on the question whether the seizure was or was not reasonable or was or was not required of the officer in the performance of his duty. And the acquittal in the criminal prosecution is not such a finding. The Coffey Case itself is contrary to plaintiff's contention in this regard, for there it is said (116 U.S. 436, at page 443, 6 S.Ct. 437, 441, 29 L.Ed. 684): "When an acquittal in a criminal prosecution in behalf of the government is pleaded or offered in evidence by the same defendant, in an action against him by an individual, the rule does not apply, for the reason that the parties are not the same; and often for the additional reason that a certain intent must be proved to support the indictment, which need not be proved to support the civil action."

And this doctrine was even more strongly stated in the later case of Chantangco v. Abaroa, 218 U.S. 476, 31 S.Ct. 34, 36, 54 L. Ed. 1116. That was an action to recover damages for destruction of a storehouse and merchandise which the complaint alleged was maliciously set afire by the defendant. The defense was that the defendant had been acquitted in a criminal action for the same burning. There Mr. Justice Lurton laid down the broad principle that at common law a judgment in a criminal proceeding cannot be read in evidence in a civil action to establish any fact there determined, and he says the reason for the rule is that the parties are not the same and that different rules of evidence are applicable—in

other words, that to be final there must be identity of issue and identity of parties. And quoting from Stone v. United States, 167 U.S. 178, 188, 17 S.Ct. 778, 42 L.Ed. 127, the court said: "In the criminal case his acquittal may have been due to the fact that the government failed to show, beyond a reasonable doubt, the existence of some fact essential to establish the offense charged, while the same evidence in a civil action brought to recover the value of the property illegally converted might have been sufficient to entitle the government to a verdict." In view of what is said in these cases, we think that the acquittal in the criminal case, coupled with the voluntary return by the United States of the property, is wholly without relation to any question involved in the instant case, and that the question whether the defendant acted in the discharge of his duty as an officer of the government in the seizure of the property is wholly open. In his plea to the declaration defendant insists—not on probable cause—but that the seizure was entirely lawful and proper. In our opinion that was the question for determination on this trial. When the defendant entered plaintiff's bar and restaurant, he was armed with a warrant authorizing him to search for and under the statute to seize untax-paid liquor. He was accompanied by a government chemist, and in the presence of plaintiff the chemist made an analysis of the beer and wine found on the premises. The analysis showed an alcoholic content of from 2½ per cent. to 9 per cent. The search also disclosed on the premises fermenting mash and the necessary ingredients to increase the alcoholic content of beer. This and other like evidence proved that there was then a clear violation of the law. There was no contradiction of any of this, and in the view we take there can be no doubt that the articles seized were subject to forfeiture, because it is admitted that plaintiff had no license and had paid no taxes on any of the liquors. Unless, therefore, the subsequent acquittal of the plaintiff by a jury forecloses the entire question so that the validity of the acts of defendant may not be inquired into, there can be no question that the equipment in the room where the untax-paid liquors were sold was subject to seizure and that the taking by the defendant was a mere incident of his duty.

In such a case, to hold that defendant was precluded from showing the facts in a suit for trespass would be unjustifiable, for so far as we know it has never been the law that trespass will lie for an act of seizure unless it appears that the act was tortious or unauthorized. Averill v. Smith, supra. Here, as we have pointed out, the question whether the act was tortious was still open, and, being still open, it was for the court and jury to say in the present action whether the seizure was made by the officer in performance of his sworn duty. And if the evidence showed that the defendant had committed no wrong, it would be an altogether unthinkable proposition to hold that the plaintiff might still recover. The question is not even one of reasonable cause, for both plea and proof show that the defendant did nothing more than the law authorized and required him to do. In these circumstances his justification is complete, and so we hold:

■ First, that plaintiff's acquittal on the criminal charge is not conclusive that the seizure was illegal or that no forfeiture was incurred.

■ Second, that the return of the property by the United States without the commencement of condemnation proceedings is not conclusive against the seizing officer in an action for trespass that the seizure was tortious.

■ Third, that in such action, if the evidence shows that at the time in question there was a violation by the owner of the revenue laws, the seizure of the officer in conformity with the law is the performance of a ministerial duty for which an action of trespass will not lie.

■ Fourth, that in a case like this R.S. § 970 (28 U.S.C.A. § 818), has no applicability.

Affirmed.