249 F.2d 382
 UNITED STATES of America, Libellant-Appellant,
v.
1500 CASES, MORE OR LESS, Etc., Respondent-Appellee.
Smith Canning Company, Claimant-Appellee.
UNITED STATES of America, Libelant-Appellant,
v.
1473 CASES, MORE OR LESS, Etc., Respondent-Appellee.
Smith Canning Company, Claimant-Appellee.
 Nos. 12021, 12022.
 United States Court of Appeals Seventh Circuit.
 Nov. 14, 1957.
 
 Robert Tieken, U.S. Atty., John Peter Lulinski, Asst. U.S. Atty., Warren Olney, III, Asst. Atty. Gen., Edwin A. Strugala, Asst. U.S. Atty., Chicago, Ill., William W. Goodrich, Asst. Gen. Counsel, Leonard D. Hardy, Atty., Dept. of Health, Education, and Welfare, Washington, D.C., of counsel, for appellant.
 Marion A. Hoy, Edward T. Duday, Oak Park, Ill., for respondent-appellee.
 Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.
 DUFFY, Chief Judge.
 
 
 1
 The United States filed two libels of information against several carloads of tomato paste charging them to be adulterated within the meaning of the Federated Food, Drug, and Cosmetic Act (21 U.S.C.A. 334(a)). Pursuant to monitions issued by the District Court, the United States Marshal seized the tomato paste on December 8, 1954 and on January 18, 1955. On those dates the tomato paste was stored in Crooks Terminal Warehouse in Chicago.
 
 
 2
 The paste was canned in Utah by the Smith Canning Company and was shipped to Chicago, Illinois. By order of the District Court, Smith Canning Company was permitted to segregate and take samples of the tomato paste which had been seized in order to test same and for purposes of analysis. Thereafter, Smith Canning Company intervened as ownerclaimant and filed answers.
 
 
 3
 After a non-jury trial, the District Court held the United States had failed to prove the alleged adulteration. Upon appeal to this Court, the judgment was affirmed in part and reversed in part. 7 Cir., 236 F.2d 208. We held the tomato paste designated 'J' code was adulterated, while that designated under 'I' code was not.
 
 
 4
 Upon remand, Smith Canning Company made a motion to tax and fix the charges for storage. The United States acknowledged its liability for storage charges for the period commencing with the date of seizure, and ending with the date of release, and has paid such charges. Claimant, however, insisted it should be awarded $2,268.09 additional to cover the period prior to the seizure of the tomato paste by the Food and Drug Administration. The pre-seizure charges arose from unloading the railroad cars and moving the cartons of tomato paste to a place of storage in the terminal warehouse. This was done on orders of the Campbell Soup Company to whom the shipments had been directed, and who had refused to accept delivery after learning the Food and Drug Administration desired to obtain samples for laboratory analysis.
 
 
 5
 The District Court ordered the payment of the pre-seizure storage charges on the theory that the Food and Drug Administration 'intercepted' the carloads of tomato paste in transit because some unnamed official or employee of the Food and Drug Administration ordered the warehouse people not to release the goods because they had been recommended for seizure. The Court thought such action in effect 'layed an embargo' on the goods and prevented their use. The District Court found that the storage handling and other charges made by the warehouse 'prior to the service of the monitions' would not have occurred except for the 'interdiction' of the paste by the Food and Drug Administration. The Court ordered that the Food and Drug Administration pay the charges out of its appropriation for the enforcement of the Federal Food, Drug, and Cosmetic Act.
 
 
 6
 The United States argues that the District Court, in effect, taxed costs against the Government and claims the Court had no right to do so. Reliance is had on Title 28 U.S.C. 2412 which provides: '(a) The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress.' It is without question that the Food, Drug, and Cosmetic Act does not provide for allowance for costs to a claimant successful in opposing libels brought by the United States. See United States v. French Sardine Co., Inc., 9 Cir., 80 F.2d 325; United States v. Poling Russell, Inc., 2 Cir., 212 F.2d 184. Nor is there any other statute authorizing the taxation of costs against the Government in a case such as we have before us on these appeals.
 
 
 7
 Claimant argues that the District Court did not assess costs against the United States, but, instead, ordered the United States to pay the claimant 'probable legal damages which claimant suffered because of the commission of a wrongful act by an employee of the Government while acting within the scope of his office and employment.' Claimant insists that the District Court had jurisdiction under the Federal Tort Claims Act (Title 28 U.S.C. 1346(b)) to assess damages because such damages grew out of the negligence or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant.
 
 
 8
 There was no claim or cause of action before the District Court which was based on the Federal Tort Claims Act. From the record it is doubtful that the Tort Claims Act was even mentioned in the District Court. Assuming, however, the theory now advanced is properly before us for consideration, we hold that the Federal Tort Claims Act is no basis for the District Court's award of damages in the cases before us.
 
 
 9
 The Federal Tort Claims Act provides for a civil action against the United States for money damages. At a basis for such an action, there must be a complaint or other pleading showing the claimant is making a claim against the United States within the confines and limits of that Act. In the cases at bar, there was no such pleading, nor was any such issue tried in the District Court. Furthermore, the statute outlining tort claims procedure provides that the Tort Claims Act shall not apply to any claim arising from the 'detention of any goods or merchandise by any officer of customes or excise or any other law-enforcement officer.' 28 U.S.C. 2680(c).
 
 
 10
 We think there is still another obstacle to the entry of damages against the United States in actions under the Federal Food, Drug, and Cosmetic Act. Title 28, U.S.C. 2465 provides: 'Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or proseuction.' It is true the District Court did not enter a certificate as provided in the statute,-- undoubtedly no such request was made. But there can be no doubt that there was reasonable ground for the seizures in the cases which are now before us.
 
 
 11
 We hold the District Court was entirely without authority to assess damages against the United States. The judgment holding that the Federal Food and Drug Administration, an agency of the United States of America, pay damages in the sum of $2,268.09 is
 
 
 12
 Reversed.