418 So.2d 1032 (1982)
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Bruce J. SCOTT, Appellee.
No. 81-1741.
District Court of Appeal of Florida, Second District.
July 2, 1982.
Rehearing Denied September 3, 1982.
*1033 Anthony N. DeLuccia, Jr., Fort Myers, for appellant.
Charles L. Bigelow, Jr., of Bigelow & Winesett, Fort Myers, for appellee.
SCHEB, Acting Chief Judge.
Appellant, Department of Health and Rehabilitative Services (HRS), appeals from the entry of a final judgment in favor of appellee, Bruce Scott. The issue we address is whether HRS, Scott's tenant, has "taken" a leasehold interest in his property by holding over and not paying him an increased monthly rental rate.
Appellee leased a building to HRS for five years ending June 30, 1977, at $2,083 per month. In anticipation of the expiration of the term of the lease, the parties stipulated to a six-month extension at an increased monthly rental rate of $4,066.42. A modification to this effect was signed July 6, 1977. The Department of General Services refused to approve the increase, and without its authorization, HRS was unable to pay the increased rate. HRS received Scott's permission to continue to occupy the premises and remained in possession for four months after the lease expired. During this period, Scott unsuccessfully sought General Services' approval of the lease extension. After the third month, HRS tendered three months rent at the old rate and notified Scott that it intended to leave in twenty days. Scott refused to accept the rent tendered by HRS, and attempted to prevent it from using the building by locking the premises. HRS obtained a temporary injunction and continued operations in the building until the latter part of October. At that point HRS moved off the premises.
Scott sued HRS on different theories, but the litigation proceeded only on his allegation that HRS had inversely condemned his property. The trial court entered a summary judgment against HRS finding that it had "taken" a leasehold interest in Scott's property for a term from July 1 to October 28, 1977. The court ordered a jury trial on damages, after which final judgment was entered in favor of appellee Scott. HRS challenges that judgment, arguing that the trial court erred in finding a taking and allowing the case to proceed on a theory of inverse condemnation. We agree with that position and reverse.
Eminent domain is the exercise of the government's power to take private property for the public good. This sovereign power is limited by our constitution which states that any taking of private property for a public purpose must be with full compensation to the owner. Art. X, § 6, Fla. Const. (1968). The government generally exercises its power to condemn through formal proceedings. However, when a governmental body takes private property without first initiating formal proceedings, the injured property owner may institute an inverse condemnation suit. City of Jacksonville v. Schumann, 167 So.2d 95 *1034 (Fla. 1st DCA 1964), cert. denied 172 So.2d 597 (Fla. 1965).
Proof of a taking by the governmental body is an essential element in an action for inverse condemnation. Taking has been defined as:
[E]ntering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.
Poe v. State Road Department, 127 So.2d 898 (Fla. 1st DCA 1961). The determinative question in an alleged taking is: What has the owner lost? In this case the owner did not lose four months rent; rather, he was deprived of receiving an increase in rent for four months occupancy by HRS.
Each factual situation involving the issue of taking must be judicially determined on an individual basis. We have found no Florida cases which suggest that failing to pay rent could be classed as a taking within the constitutional meaning of the term. Nevertheless, a profitable comparison may be made to Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956), and Dudley v. Orange County, 137 So.2d 859 (Fla.2d DCA 1962). In Weir the supreme court found that the widening of a highway which destroyed the lateral support of the citizen's property did not amount to a taking or appropriation of his property. In Dudley v. Orange County, this court found that flooding caused by the county's dams which affected private property was not a taking because there was no showing of continuous flooding that inflicted irreparable and permanent injury to the property. The underlying rationale in these cases is that the damage did not amount to a permanent deprivation of the owners' use of their lands. Likewise, in the instant case, the acts of the appellant did not permanently deprive the appellee of the use and enjoyment of his property.
The common thread running through the cases on inverse condemnation involves situations where a continuing trespass or nuisance ripens into a constitutional taking of property without the payment of just compensation. In this case there was no trespass for the three months that HRS was holding over as a tenant with appellee's permission. Once it notified appellee that it intended to move in twenty days and appellee locked the premises, permission was withdrawn. Nevertheless, HRS moved out promptly and the short period of time that it took for it to vacate the premises did not "ripen" into a constitutional taking of appellee's property.
We hold that a dispute over rent to be paid between a landlord and a government tenant arising after termination of a lease agreement, where the government retains use of the premises while the parties attempt to negotiate a new agreement, cannot be characterized as a taking.
We note that appellee sought his remedy through inverse condemnation as an alternative to other requested relief. While appellee should be entitled to pursue a remedy against HRS, we believe that he should do so on a basis other than the theory of inverse condemnation.
Accordingly, we vacate the judgment and remand to the trial court so that appellee may further litigate his cause on grounds other than the theory of inverse condemnation.
CAMPBELL and SCHOONOVER, JJ., concur.