513 So.2d 725 (1987)
George M. MORTON and Marlene J. Morton, Appellants,
v.
Tom GARDNER, Executive Director, Department of Natural Resources, State of Florida, Appellee.
No. 86-1141.
District Court of Appeal of Florida, Third District.
September 29, 1987.
Rehearing Denied November 2, 1987.
*726 James S. Mattson, Key Largo, for appellants.
L. Kathryn Funchess, Tallahassee, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
The questions presented on this appeal are (1) whether the seizure of a vessel pursuant to the Florida Contraband Forfeiture Act gives rise to an inverse condemnation claim by the vessel's owner who prevails in the forfeiture proceeding, and (2) whether such prevailing owner is entitled to recover damages in tort for the loss of use of his property. We answer both questions in the negative and affirm the judgment under review.

I.
The Miss Jean, a commercial lobster fishing boat owned by the appellants, George and Marlene Morton, was seized by Florida Marine Patrol officers who were found to have had probable cause[1] to believe that the vessel was carrying a contraband article  marijuana  in violation of the Florida Contraband Forfeiture Act, §§ 932.701-.704, Fla. Stat. (1983).[2] Pursuant to the Act, the State instituted forfeiture proceedings which concluded with the trial court *727 finding that the Miss Jean was not in fact carrying marijuana on the day in question and, consequently, dismissing with prejudice the State's forfeiture petition and ordering the immediate return of the vessel to the Mortons.
Left pending after the disposition of the forfeiture proceedings  and the only matter of concern on this appeal  was the amended counterclaim of the Mortons.[3] Disregarding its prolixity, the counterclaim sought compensation on two theories  tort and inverse condemnation  each of which was based on the claim that the Mortons had been wrongfully deprived of the use of their vessel for 124 days, the duration of its detention by the State.
The trial court dismissed the tort claim for failure to state a cause of action and allowed the inverse condemnation claim to proceed to trial by jury. The jury, instructed that probable cause to seize the vessel was a complete defense to the inverse condemnation claim,[4] rendered a verdict for the State, expressly finding in its verdict that there was probable cause.[5] The Mortons appeal.

II.

The Tort Claim.
The Mortons contend that the judgment in their favor in the forfeiture proceeding establishes that the seizure and the subsequent detention of their vessel were unlawful and entitles them to recover damages in a tort action against the State. We disagree.
Seizure and forfeiture in Florida are governed by Sections 932.701-.704, Florida Statutes, the Florida Contraband Forfeiture Act.[6] The Act provides for the seizure of "any vessel, motor vehicle, aircraft, and other personal property" carrying contraband. § 932.703. It requires that the State promptly institute proceedings to forfeit the seized property. § 932.704(1). Upon producing "due proof" that the property was being used in violation of the law, the State is entitled to have the property forfeited, and the final order of forfeiture perfects the State's title in the contraband.
Federal law similarly provides for the seizure and forfeiture of carriers of contraband articles. 49 U.S.C. §§ 781-782. Federal law additionally provides:
"[u]pon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.
28 U.S.C. § 2465.
*728 The state and federal statutory schemes, despite differences in phraseology, both allow seizure of a vessel upon probable cause to believe that it is a carrier of contraband, but require for forfeiture proof that the vessel in fact carried contraband. While Florida law has no counterpart to the federal provision for a "probable cause certificate," the absence of such a provision is, as will be seen, of no significance in determining governmental liability for a seizure.
Federal courts recognize that the purpose of the probable cause certificate is "to protect against liability for costs [taxed to the government] or damages [sought from the seizing officer] on account of the institution of [a forfeiture proceeding] where there is reasonable cause for instituting [it]... ." United States v. Tito Campanella Societa di Navigazione, 217 F.2d 751, 756 (4th Cir.1954). However, the absence of a certificate does not mean that an owner of seized property will prevail; the existence of probable cause for the seizure remains a barrier to the recovery of damages against the United States. United States v. 1500 Cases, More or Less, 249 F.2d 382 (7th Cir.1957).
In Hammel v. Little, 87 F.2d 907 (D.C. Cir.1936), the court had before it an action for trespass brought against a seizing officer where the property seized was returned to the plaintiff after his acquittal of the underlying criminal charge. The plaintiff in Hammel contended that "probable cause is never a justification for an illegal seizure" where no probable cause certificate is issued. Id. at 908. In making this contention, the plaintiff relied (as do the Mortons here) on The Apollon, 22 U.S. (9 Wheat.) 362, 373, 6 L.Ed. 111, 114 (1824), in which the court held that the seizer is liable for damages after a property owner's acquittal and cautioned that a party "seizes at his peril." Responding, the Hammel court pointed out that in The Apollon the court had refused to give a certificate of reasonable cause and observed, therefore, that "the sweeping language of [The Apollon] that probable cause is never an excuse for a seizure ... was doubtless meant to apply only to the case then under consideration by the court." Hammel v. Little, 87 F.2d at 909-10. The rather unremarkable meaning of The Apollon, then, is that denial of a probable cause certificate is a determination that the seizure was tortious and gives rise to an action for damages.[7]Id. at 912. But the mere absence of a certificate determines nothing.
Although Florida statutory law lacks the protection from damage suits given federal officers by the probable cause certificate, no forfeiture proceeding can go forward under the Florida scheme without a determination that probable cause existed. Following a seizure, the State must promptly proceed against the property by petition for a rule to show cause. § 932.704(1), Fla. Stat. (1983). The claimant's exclusive avenue of recovery then becomes the forfeiture proceeding itself, where he may prove by a preponderance of the evidence (as the Mortons did here) that the forfeiture statute was not violated. But a successful claimant becomes entitled only to the return of his property. In Re Approximately Forty-Eight Thousand Nine Hundred Dollars in U.S. Currency, 432 So.2d 1382, 1385 n. 6 (Fla. 4th DCA 1983); § 932.703(1).
The process, then, has two steps: (1) seizure, the validity of which depends on the presence of probable cause to believe that the property seized was being used in violation of the Act, and (2) forfeiture, the validity of which depends on a finding that the property seized was in fact being used in violation of the Act and is thus forfeitable. The Mortons do not dispute that the *729 seizure was based on probable cause[8]; they merely contend that the finding that the vessel was not in fact being used in violation of the Act retroactively invalidates the seizure.[9] The contention is without merit, and we reject it.[10]
It is well settled that "[i]f a man by warrant is arrested for suspicion of a felony, it is not necessary that he should be found guilty on his trial, in order to justify the arrest," Hammel v. Little, 87 F.2d at 910 (quoting Lord Mansfield); a fortiori, if a person's property is seized upon probable cause, it is not necessary that the State prevail in the forfeiture proceeding in order to justify the seizure.[11] "[S]o far as we know it has never been the law that trespass will lie for an act of seizure unless it appears that the act was tortious or unauthorized." Hammel v. Little, 87 F.2d at 912. See also United States v. 1500 Cases. More or Less, 249 F.2d 382.

III.

Inverse Condemnation.
We turn now to the Mortons' contention that the seizure and detention of their vessel sounds not only in tort, but also represents a "taking" by the government giving rise to a claim in inverse condemnation for compensation for their loss of use of the vessel for 124 days. We reject this contention as well.
In Florida, an action for inverse condemnation does not arise from a temporary "taking." Hillsborough County v. Gutierrez, 433 So.2d 1337 (Fla. 2d DCA 1983) (where flooding in a landowner's house caused by the county's action was remedied, the temporary ouster supports a claim in tort, not inverse condemnation). Only a permanent deprivation of an owner's use of his property will support such an action. Department of Health and Rehabilitative Services v. Scott, 418 So.2d 1032 (Fla. 2d DCA 1982). When governmental action merely impairs the owner's use of his property, "the action does not constitute a `taking' but is merely consequential damage and the owner is not entitled to compensation." Village of Tequesta v. Jupiter Inlet Corp., 371 So.2d 663, 669 (Fla. 1979). The damages then are damnum absque injuria and thus not *730 compensable. Id.; accord Florida East Coast Properties, Inc. v. Metropolitan Dade County, 572 F.2d 1108 (5th Cir.1978).
Even more to the point, Florida courts are consistent in their view that "loss of use" claims are not compensable in condemnation or seizure cases. County of Volusia v. Pickens, 439 So.2d 276, 278 (Fla. 5th DCA 1983) ("Lost profits and business damages are generally not deemed to be property for which compensation is due in the context of condemnation proceedings, absent a special statutory remedy.")[12]; City of St. Petersburg v. Wall, 419 So.2d 1167 (Fla. 2d DCA 1982) (in absence of showing of bad faith, city not liable for damages for loss of use of property during condemnation proceeding), approved, 475 So.2d 662 (Fla. 1985); cf. City of Miami Beach v. Bules, 479 So.2d 205 (Fla. 3d DCA 1985) (after unsuccessful forfeiture, owner entitled to damages for loss of use during appeal by city only because clearly contemplated by court's order granting city's motion to stay final judgment pending appeal).
We find inapposite the cases relied upon by the Mortons: none supports the proposition that one is entitled to damages for loss of use during a lawful detention. Lowther v. United States, 480 F.2d 1031 (10th Cir.1973), as noted supra n. 9, involved the permanent destruction of weapons seized from the owner.[13]Jaekel v. United States, 304 F. Supp. 993 (S.D.N.Y. 1969), involved a due process claim under the Tucker Act[14] by a woman whose automobile was seized in connection with the arrest of her daughter on a narcotics charge. The vehicle was subsequently forfeited and sold. The district court held that, because the government had failed to give the owner adequate notice of the forfeiture proceedings, the proceedings were void, and the government was liable for the retail value of the car at the time of the seizure. Likewise, United States v. One 1965 Chevrolet Impala Convertible, 475 F.2d 882 (6th Cir.1973), and United States v. One 1961 Red Chevrolet Impala Sedan, 457 F.2d 1353 (5th Cir.1972), involved invalid forfeitures.
The clear and singular distinction between the Mortons' inverse condemnation claim and the cases relied on in support of the claim is that the latter all involved property actually appropriated by the government  that is, forfeited, sold, or destroyed. The Mortons' vessel was merely seized and detained; upon proof that it was not being used in violation of the law, it was returned to them.
The Mortons argue, however, that Castleberry v. Alcohol, Tobacco & Firearms Division, 530 F.2d 672 (5th Cir.1976), supports the proposition that detention damages may be recovered in an inverse condemnation action. In our view, Castleberry merely holds that post-seizure, pre-forfeiture relief in the trial court is limited to requiring the government either to institute forfeiture proceedings promptly or to return the property and abandon the seizure. The court observed that a claimant prevailing upon the merits in the forfeiture action would have a Tucker Act due process claim for money damages should the government "tarry unnecessarily" in seeking the forfeiture. Id. at 677 n. 8. No such due process violation is evident in the present case, and the Mortons have never urged that the length of the detention was unreasonable.
Finally, Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. *731 1765 (1949), does not hold, as the Mortons contend, that compensation is constitutionally required even for a temporary taking. In Kimball, the government had actually condemned the laundry and taken it for its own use, though only for a period of years while its need for laundry facilities existed.

IV.
In sum, there is no contention in the present case that the State lacked the authority to enforce the Florida Contraband Forfeiture Act, the purpose of which clearly is to protect the public from the proliferation of substances, instrumentalities, and the like, related to criminal offenses. To the contrary, the Mortons point to the lawfulness of the governmental action as a necessary element of their inverse condemnation claim. In light of the undisputed existence of probable cause to support the propriety of the seizure, along with notice of forfeiture proceedings to the boat owners, the absence of unnecessary delay in going forward with the proceedings, and the proscription by Florida courts of "taking" claims based on temporary deprivation, the Mortons' claims for loss of use in tort and in inverse condemnation must fail.[15]
Affirmed.
NOTES
[1] The Mortons concede that there is sufficient evidence to support this finding.
[2] Section 932.701 defines "contraband article" as, among other things, any controlled substance defined in Chapter 893, which includes marijuana. Section 932.702 makes it unlawful to transport, carry, or convey any contraband article upon any vessel. Section 932.703 provides for the seizure of a vessel used in violation of Section 932.702 and makes the vessel subject to the forfeiture proceedings outlined in Section 932.704.
[3] The Mortons' claims were initially filed in a complaint seeking replevin of the boat and damages. When the State brought its forfeiture proceeding, the Mortons incorporated all of their damages claims in a counterclaim to the forfeiture. After disposing of the replevin and other assorted and imagined torts alleged in the complaint, the trial court consolidated the complaint and counterclaim, which by then were virtually identical.
[4] The court, after defining probable cause, instructed the jury:

"If the greater weight of the evidence discloses that the State had probable cause to seize the vessel and had the right to institute forfeiture proceedings, the State is entitled to qualified immunity, then your verdict should be for the defendant, and the State is not liable for any damages alleged to have risen as a result of the seizure of the `Miss Jean.'"
[5] Although the Mortons have conceded that the finding of probable cause is justified, they consider the existence vel non of probable cause to be entirely irrelevant. We are thus not presented with the question whether the determination of probable cause should have been made by the jury. See City of Pensacola v. Owens, 369 So.2d 328 (Fla. 1979) (in malicious prosecution action, what facts and circumstances amount to probable cause is a question of law for the court, but whether a certain set of facts and circumstances exist is a question of fact for the jury); City of Jacksonville v. Alexander, 487 So.2d 1144 (Fla. 1st DCA 1986) (same; false arrest action).
[6] The Act was patterned after its federal counterpart and, for that reason, Florida courts "place great reliance on federal case authority." In re Approximately Forty-Eight Thousand Nine Hundred Dollars in U.S. Currency, 432 So.2d 1382, 1385 (Fla. 4th DCA 1983); see Griffis v. State, 356 So.2d 297 (Fla. 1978).
[7] Presumably, such an action would be brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).
[8] The probable cause to believe that the Miss Jean was used to transport contraband arose in the following fashion. The vessel left Key Largo in the morning to collect lobsters and retrieve some of its lobster traps. Shortly thereafter, a Coast Guard officer boarded the Miss Jean, inspected the ship's documents, told Mr. Morton that there were bales of marijuana floating in the area, and warned him not to pick them up should he come upon them. Around noon, a Florida Marine Patrol plane was dispatched on information that the Miss Jean had marijuana bales aboard. The pilot reported that he saw a bale of marijuana on Miss Jean's transom being pushed into the sea and that the marijuana dispersed as if the bale had been cut open. The pilot radioed other Marine Patrol officers who went to the site by boat and picked up parts of a plastic bag and several pounds of marijuana from the water. When the Miss Jean was boarded and searched soon thereafter, there were no signs of contraband aboard.
[9] In support of their contention, the Mortons cite only Lowther v. United States, 480 F.2d 1031 (10th Cir.1973). Lowther involved property found not to have been used in violation of the law but which was subsequently destroyed by federal authorities. Thus, Lowther stands for the proposition that where property is found not to be contraband, the owner is entitled to return of the property or to its equivalent. Since the Mortons' property was returned to them, Lowther is inapposite.
[10] Our conclusion that the seizure of the Mortons' vessel was not wrongful makes it unnecessary to address whether the seizure, even if wrongful  that is, unsupported by probable cause  was nonetheless within the discretionary function exception to Florida's waiver of sovereign immunity. It is apparent, however, that the Mortons' concern that their cause of action in tort might be negated by a sovereign immunity defense led them to resourcefully urge their alternative theory of inverse condemnation.
[11] This is much like the view expressed in Sponder v. Brickman, 214 So.2d 631, 632 (Fla. 3d DCA 1968), in the context of a malicious prosecution action:

"Acquittal of a person tried for violating the law is not sufficient to establish the absence of probable cause for instituting criminal proceedings. If the converse were the rule, then a public officer ... would be liable in damages for malicious prosecution.... Such a state of affairs would be detrimental to the public interest, since public officers would be discouraged from performing their duties conscientiously."
[12] See, for example, Section 73.071, Florida Statutes, which provides that where less than an entire property is taken by eminent domain proceedings, resulting business damages may under certain circumstances be recovered.
[13] In Lowther, 480 F.2d 1031, the federal government seized weapons alleged to have been possessed illegally. The owner was acquitted of the charges. His application for remission of the forfeiture was denied and, at the trial reviewing the denial, it was discovered that, without notice to the owner, the government had already destroyed the weapons. The appellate court affirmed the trial court's conclusion that this forfeiture amounted to a "palpable taking of property without due process." Id. at 1035. The appropriate remedy in such a case, the court held, was an action under the Tucker Act, 28 U.S.C. § 1346(a)(2), permitting suit in the district court against the United States founded upon the unconstitutional forfeiture.
[14] 28 U.S.C. § 1346(a); see also 28 U.S.C. § 1491.
[15] In their counterclaim, the Mortons additionally alleged that the Miss Jean was physically damaged and some of its equipment was lost during the time it was detained and while it was in the custody of agents of the State. Such damages, claimed to be approximately $850, are, of course, recoverable even if the seizure was justified. See City of Miami Beach v. Bules, 479 So.2d 205 (Fla. 3d DCA 1985) (damage to boat compensable); One 1978 Green Datsun Pickup Truck v. State ex rel. Manatee County, 457 So.2d 1060 (Fla. 2d DCA 1984) (right to claim storage fees upon improper seizure), appeal after remand, 475 So.2d 1007 (Fla. 2d DCA 1985) (State liable for loss of seized vehicle following unsuccessful forfeiture proceedings), rev. denied sub nom. State ex rel. Manatee County v. Kruysman, 486 So.2d 598 (Fla 1986); State ex rel. City of Pompano Beach v. Washington, 352 So.2d 138 (Fla. 4th DCA 1977) (right to recover for damage resulting from improper towing, storage, and negligent care of automobile). See also Lowther v. United States, 480 F.2d 1031. Compare Formula One Motors, Ltd. v. United States, 777 F.2d 822 (2d Cir.1985) (claim brought under Federal Tort Claims Act for automobile so damaged by DEA search as to render it destroyed not compensable as falling within exception of 28 U.S.C. § 2680(c)). However, the Mortons did not insist that these damages be separately decided in the verdict form and make no separate argument about them on this appeal. We consider the Mortons' claim to these damages to have been waived.