Evelyn CASTLEBERRY and Virginia R. Castleberry, Plaintiffs-Appellees,

v.

ALCOHOL, TOBACCO AND FIREARMS DIVISION OF the TREASURY DEPARTMENT OF the UNITED STATES, et al., Defendants-Appellants.

No. 75–2371.

United States Court of Appeals, Fifth Circuit.

April 23, 1976.

---

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for defendants-appellants.

Dick DeGuerin, Houston, Tex., for plaintiffs-appellees.

Before THORNBERRY, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

On April 24, 1975, Texas law enforcement officers in the course of their duties and pursuant to a search warrant discovered a "sawed off" shotgun in a 1975 Cadillac Fleetwood Sedan owned by Evelyn and Virginia Castleberry.[1] The state officers promptly notified the Alcohol, Tobacco, and Firearms Division of the Treasury Department. As the shotgun is alleged to be a destructive device[2] prohibited by Title 26 U.S.C. Section 5845(d) the car in which it was found was seized pursuant to Title 49 U.S.C. Sections 781, and 782. On May 15, 1975, the Castleberrys filed a civil action in federal district court against the Alcohol, Tobacco, and Firearms Division of the Treasury Department, Houston Division (ATF hereinafter)[3] and against Gerald A. Lawrence, Houston area supervisor of ATF, and Jimmy Wooten, the ATF agent who seized the vehicle, individually and in their official capacities, asking return of the car and damages. The complaint alleged somewhat ambiguously that the Cadillac was "wrongfully stolen" by the defendants. On the same day District Judge Seals, on the basis of the complaint, issued a "Judge's Fiat" forbidding defendants "to dispose of, abscond with, use, or in any other manner hypothecate the 1975 Cadillac herein" pending further proceedings. A hearing was directed to be held May 28, 1975, to show cause why the 1975 Cadillac should not be returned to plaintiffs. The matter came on to be heard on May 28 before District Judge Singleton.

Judge Singleton issued an order immediately following that hearing finding that the defendants "did not timely file

1. William Castleberry, husband of Evelyn Castleberry and father-in-law of Virginia R. Castleberry, was initially charged with possession of the firearm. Government counsel stated at oral argument before us that criminal charges were not being pursued due to some confusion as to the state search warrant.

2. Appellees assert that the shotgun is neither sawed off nor a destructive device within the meaning of the prohibitory statutes. This determination is, of course, a matter for the district court.

3. More properly designated as The Bureau of Alcohol, Tobacco and Firearms of the U.S. Treasury Department. This entity is not suable, since the Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized either or any of them to be sued *eo nomine.* See, e. g., *Morgan v. Bureau of Alcohol, Tobacco and Firearms,* E.D. Tenn.1974, 389 F.Supp. 1099. See generally *Blackmar v. Guerre,* 1952, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534, dealing specifically with the United States Civil Service Commission.

a petition for seizure of said 1975 Cadillac automobile in that said automobile was seized from petitioners on April 24, 1975, and as of hearing date on May 28, 1975, no forfeiture proceedings had been filed and the Assistant U. S. Attorney, W. Palmer Kelly could offer no reasonable explanation as to why said forfeiture proceedings had not been timely filed." The court therefore ordered the Cadillac to be returned forthwith to plaintiffs. Judge Singleton refused to issue a stay pending appeal. A panel of this court granted an emergency stay, preceded by a short single judge stay preserving the *status quo* to permit application to the panel. Subsequent to Judge Singleton's order and this appeal the United States brought a condemnation libel for forfeiture of the car. This action is now pending on the civil docket of yet a third district judge of the Southern District of Texas.

Primary to decision of this appeal is consideration of the jurisdictional issue presented. If the agents involved did "wrongfully steal" the Cadillac, it was not, of course, in the course of their official duties. Proper jurisdiction would then be in the state courts in an action such as replevin, detinue, or perhaps trover.[4] *Allen v. David,* 5 Cir. 1964, 334 F.2d 592, 599, cert. denied 1965, 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560. On the other hand, if defendants were acting in an official capacity when they took the car, then the suit is actually one against the United States, and perhaps barred by sovereign immunity. See *Larson v. Domestic and Foreign Service Corp.,* 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

▮▮ Each of the parties relies upon *In re Behrens,* 2 Cir. 1930, 39 F.2d 561. The dearth of more recent authority requires that we examine *Behrens* here in some detail. There federal prohibition agents broke into the petitioner's home and garage without a valid warrant and confiscated equipment and utensils found there which were termed "appropriate

for a brewery." The plaintiff brought a summary proceeding against the agents for return of the equipment, which relief the district court refused. The Circuit Court of Appeals, after discussing applicable jurisdictional principles, including the problem of sovereign immunity, and the prohibition statutes, held that upon the filing of the petition and a "show cause" hearing thereon, the district court should have directed the prohibition administrator to institute forfeiture proceedings promptly (the Second Circuit thought within ten days to be appropriate) or to abandon the seizure and return the property. The *Behrens* court relied upon, *inter alia,* the case of *Slocum v. Mayberry,* 2 Wheat 1, 4 L.Ed. 169, a case arising from the seizure of a vessel under the Embargo Act of April 25, 1808, 2 Stat. 499. Chief Justice Marshall, for the Court, stated:

> "The party supposing himself aggrieved by a seizure cannot, because he considers it tortious, replevy the property out of the custody of the seizing officer, or of the court having cognizance of the cause. If the officer has a right, under the laws of the United States, to seize for a supposed forfeiture, the question, whether that forfeiture has been actually incurred, belongs exclusively to the federal courts, and cannot be drawn to another forum; and it depends upon the final decree of such courts whether such seizure is to be deemed rightful or tortious. *If the seizing officer should refuse to institute proceedings to ascertain the forfeiture, the district court may, upon the application of the aggrieved party, compel the officer to proceed to adjudication, or to abandon the seizure.*"

emphasis added, 1 Wheat at 9, 4 L.Ed. at 171, quoted within *Behrens,* supra, 39 F.2d at 563. This reasoning is applicable here. A requirement that the Treasury agents institute forfeiture proceedings promptly or else return the property and abandon the seizure, and at the same

---

4. Appellees assert, not without some logic, that if they had filed suit in state court, the United States would have promptly filed a motion to quash for lack of state jurisdiction over the United States and its agencies.

time following the admonition of the *Behrens* court that the legality of the seizure itself is to be determined in the forfeiture proceedings and not as an aspect of the present action, appears to us to be the limit of the relief a district court may grant in this situation.[5]

Within this limited relief the district court may determine whether the ATF or its agents are in fact unreasonably delaying the filing of the forfeiture proceedings. This determination of diligence or lack of it by the government agents does not reach the merits of the forfeiture itself. The provisional relief suggested which is subject to the government undertaking to properly file forfeiture proceedings, is markedly different from the relief granted by Judge Singleton, which was so complete as to preclude any determination of the merits of the seizure. We reiterate that the proper place to litigate the legality of the seizure of the automobile is in the forfeiture proceedings and not elsewhere.

Moreover, we doubt that the district court's summary disposition gave adequate consideration to whether or not the ATF agents were dilatory in this matter. The car was seized April 24, 1975. On May 15, 1975, twenty-one days later, the plaintiffs obtained Judge Seal's fiat forbidding the defendants from disposing of, absconding with, "or in any other manner hypothecat[ing] the 1975 Cadillac herein". The government insists that this language may be fairly construed as forbidding the filing of a forfeiture action, pending the hearing scheduled for May 28 by Judge Seals' order. (As noted, the matter came on before Judge Singleton)

This is not an unreasonable assumption on the part of the government in light of the total circumstances, particularly since the institution of a libel for forfeiture would shift the custody of the car from the ATF agents, the parties restrained by the order, to the United States Marshal. Judge Singleton's comments at the hearing of May 28 made it clear that he did not regard Judge Seals' order as any impediment to the filing of a libel in rem for forfeiture of the seized automobile.[6]

5. Instances may arise in which due to extraordinary circumstances, manifest bad faith on the part of the government agents, or irreparable damages to the plaintiff, more immediate and drastic relief would be appropriate. We do not find it necessary to pursue these possibilities.

6. The hearing before Judge Singleton, in its entirety went as follows:

The Court: Please be seated, Ladies and Gentlemen. I apologize to you for delaying you.

We have a TRO. Are they here?

Mr. DeGuerin (plaintiff's counsel): Yes, sir.

The Court: What's that about?

Mr. DeGuerin: It's about a car that the Government has taken from my client, Your Honor, and refused to return. They have kept it now for over a month and haven't filed a forfeiture.

We say there's no grounds for them to take it or to forfeit it, Your Honor

We've sued for both the return of the property and for damages.

The Court: What's the position of the Government?

Mr. Kelly (counsel for the government): Your Honor, it was seized by the Department of the Treasury, Alcohol, Tobacco, and Firearms, for carrying an illegal weapon; to wit, a destructive device, in violation of the National Firearms Act, and was seized under Forty-Nine—

The Court: Why don't you file a forfeiture proceeding?

Mr. Kelly: Well, we are.

The Court: Why haven't you done it yet?

Mr. Kelly: Well—

The Court: Give the car back to them. If you have not filed a forfeiture proceeding by now, you shouldn't have the car.

I can't sit around here, nobody can sit around; the Government shouldn't be permitted to sit around and keep somebody's property for over a month while they're trying to make up their mind what to do. This Court does not approve of that at all and never has.

Mr. Kelly: Yes, sir. I understand.

The Court: And I'm not going to approve of it now. If Tobacco & Firearms people want to get with it, let them get with it. Give the car back to them. I will enjoin you from keeping the car.

Thank you. We will set the case down for hearing on damages at sometime when I get back.

Mr. Kelly: Your Honor—

The Court: Can you give me any reasonable excuse why you have not filed a forfeiture proceeding?

■ This determination, while debatable, is perhaps not critical to an assessment of the diligence with which the government was preparing for the filing of a libel against the Cadillac. Only 34 days elapsed between the seizure on April 24 and the order of May 28 for the car to be returned. Forfeiture proceedings were filed four days later. Thirty-eight days from seizure of property to the filing of an in rem libel for forfeiture may not constitute unconscionable delay in the absence of aggravating circumstances, although we find no reason to decide that question here.[7] We note that libels in rem for forfeiture, although a relatively simple problem from the U. S. Attorney's point of view, and

Mr. Kelly: Well, Your Honor—

The Court: Do you have any excuse?

Mr. Kelly: It just takes time for the Alcohol, Tobacco and Firearms people to get the papers down—

The Court: Oh, don't make me laugh. Give the car back to the man and I will set it down for a hearing.

Mr. Kelly: Your Honor, may we have a stay of execution pending appeal?

The Court: No, Sir. You cannot have a Stay of Execution pending appeal. If you want to get the Fifth Circuit to grant a stay, get up there and get it and tell them I acted just as I did.

Let the record reflect that you had the car for over—How long have they had the car?

Mr. DeGuerin: Since April the 24th.

The Court: —Since April the 24th of 1975. You have had the car since April 24th, 1975 and it is now May the—What?

Mr. DeGuerin: 28th.

The Court: —28th, 1975, and the Government can produce in court, in open court, no reasonable excuse for failing to file a Forfeiture of Proceeding.

Mr. Kelly: Your Honor, for the last week and-a-half we have been under an injunction by the Court, which is the reason we haven't filed in the last week.

The Court: What injunction? I have granted no injunction. I did not grant—

Mr. Kelly: No, sir, put out by Judge Seals. Fiat of Judge Seals which prohibited us from disposing or in any other way doing anything with the car.

The Court: I didn't do anything.

Mr. DeGuerin: Judge Seals enjoined or signed a temporary restraining order restraining them from disposing it, Your Honor.

The Court: Restrained them from disposing it, not from filing a Forfeiture Proceeding.

Let the Record reflect that Judge Seals signed a Temporary Restraining Order. So you can take it up to the Fifth Circuit I want you to get it up there. I want to see what the Fifth Circuit says about this. Judge Seals signed the temporary restraining order on May the 28th—No, signed a temporary restraining order on the 15th day of May, 1975 directing you, the Government, not to dispose of, abscond with, use or in any other manner hypothecate the Cadillac car involved.

Mr. Kelly: Yes, sir.

The Court: Temporary Restraining Order is silent as to any restraint against you from filing a Forfeiture of Proceedings.

Mr. Kelly: Well, Your Honor, we would—

The Court: And this Court does not approve of any agency of the Government using any person's property at any time when there is an inexcusable delay to proceed in a legal manner for holding the property.

Mr. Kelly: Your Honor, there was no delay.

The Court: Well, I find the delay unreasonable and inexcusable under these circumstances.

Now, take it up. Okay.

Mr. DeGuerin: Thank you, Your Honor, may we be excused?

The Court: Set it down for a hearing. From now on, maybe the Government could get on the ball. You have plenty of time to jack around with everything else.

All right. This is just the Cadillac, right?

Unidentified man: Yes, sir.

The Court: Not what is alleged to be an illegal firearm?

Mr. DeGuerin: It's not illegal, Your Honor, but we don't—

The Court: I said alleged to be an illegal firearm. This is just the Cadillac automobile.

All right.

7. We regard *United States v. Thirty-Seven Photographs*, 1971, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822, as inapposite to the problems presented in this case. In that case the Court, with the intent of providing an authoritative construction to rectify what was felt to be a severe Constitutional infirmity of 19 U.S.C. Section 1305(a), determined that judicial forfeiture proceedings against obscene literature under that statute must be instituted within fourteen days from the date of seizure, and that there may be an interval of no more than sixty days from the filing of these proceedings to final decision by the district court (exclusive of any delays caused by the party opposing forfeiture). The overriding Constitutional concern of the Court in *Thirty-Seven Photographs* was, of course, the First Amendment, a consideration obviously not present here.

requiring of him a minimum of paperwork before filing, may not proceed until the Bureau of Alcohol, Tobacco, and Firearms of the Treasury Department transmits to the United States Attorney's office files and materials relevant to the underlying seizure. It is inevitable that this process requires a certain amount of time that is outside the control of the United States Attorney as the party initiating forfeiture.[8]

The provisional limited relief sketched earlier is we believe encompassed within the equitable powers of the district court necessarily inherent in the court's supervision of its own docket.[9] Although the forfeiture already instituted below perhaps renders our views largely dictum, we believe that when a district judge is persuaded that an unconscionable delay is taking place on the part of the seizing government agency he should grant provisional relief to the plaintiff, subject to the seizing agency's bringing proper forfeiture proceedings within a reasonable length of time. But there is no basis for a district court's summary disposition of the merits of the forfeiture itself, which is essentially what occurred below.

The order appealed from is vacated with directions to dismiss the complaint. The subsequently instituted proceedings for forfeiture are the appropriate vehicle for disposition of the merits of the seizure. Should the owners prevail on the merits, the Tucker Act provides the remedy for damages for detention.

VACATED and REMANDED with directions.

---

**8.** In *United States v. One (1) 1972 Wood 19 Ft. Custom Boat,* Fl. 8443AY, 5 Cir. 1974, 501 F.2d 1327, we held that ten months delay between the seizure of a boat and trailer (used to transport marijuana) and the institution of proceedings for forfeiture did not deny the claimants due process. We note, however, that the Tenth Circuit, relying heavily upon *United States v. Thirty-Seven Photographs,* Note 7 supra, and refusing to draw a distinction between the First Amendment rights protected by *Thirty-Seven Photographs* and due process Fifth Amendment rights, found delay to be a defense to the merits of a forfeiture action. *Sarkisian v. United States,* 10 Cir. 1973, 472 F.2d 468, cert. denied, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219. In any event, the owner claimant is not without a remedy should the government in a case such as this tarry unnecessarily in seeking forfeiture. Aside from the limited or provisional relief suggested within the text of this opinion, if the claimant ultimately prevails upon the merits in the forfeiture he may sue the United States for monetary damages under the Tucker Act. *Simons v. United States,* 9 Cir. 1974, 497 F.2d 1046; *United States v. One 1965 Chevrolet Impala Convertible,* 6 Cir. 1973, 475 F.2d 882; *United States v. One 1961 Red Chevrolet Impala Sedan,* 5 Cir. 1972, 457 F.2d 1353; *Jaekel v. United States,* D.C.N.Y. 1969, 304 F.Supp. 993.

**9.** See our discussion of the equitable jurisdiction of the district court in *Hunsucker v. Phinney,* 5 Cir. 1974, 497 F.2d 29, cert. denied, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397, in the context of pre-indictment actions in tax cases for the suppression of evidence and the return of property. *Richey v. Smith,* 5 Cir. 1975, 515 F.2d 1239 addressed similar problems.