**Fred M. VANCE, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 81–1259.

United States Court of Appeals, Fifth Circuit.

May 20, 1982.

Rehearing Denied July 6, 1982.

---

McDonald, Karam & Guyer, Ronald P. Guyer, San Antonio, Tex., for plaintiff-appellant.

Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for defendant-appellee.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

On December 31, 1979, Officer Meck of the Universal City, Texas Police Department stopped a 1973 Chevrolet van because the boat trailer it was pulling was not equipped with proper trailing lights. The van belonged to Fred M. Vance but was being driven by Jerry Gaunt. Finding Gaunt's license expired, Officer Meck, following what he described as standard procedure, impounded the vehicle. Meck inventoried the van's contents prior to permitting a wrecker to tow it to the police impoundment garage, where it would remain until delivered to a licensed driver with proof of ownership.

During the inventory of the van, Officer Meck found no contraband. The van was seized solely because of the Universal City Police Department's practice of impounding any vehicle being operated by a driver without a current license.

Although the record contains significant gaps, it appears that four days after impoundment, firemen were called to check the van; chemical odors reportedly were emanating from its interior. The firemen determined that no danger was posed by volatile chemicals and a federal Drug Enforcement Agency agent was summoned. At this point, the van was suspected of housing a methamphetamine laboratory. The DEA agent examined the contents of the van, which the firemen had placed on the ground nearby, opening boxes and other closed containers. Subsequently, although the precise time is not supplied by the record, the DEA agent, accompanied by a DEA chemist, again examined the van's contents, taking samples of residue from a stove and from various containers. Warrant authorization for these searches and seizures was not sought. There is no serious suggestion that exigent circumstances justified these warrantless intrusions. There can be no serious suggestion, under these circumstances, that the "plain view" doctrine applied.

Although the record is sparse and sketchy, it appears that the government proceeded with plans to sell the van because it allegedly was used to facilitate proscribed drug activities. The sale was scheduled for October 29, 1980.

On October 28, 1980, Vance filed the instant Tucker Act suit, 28 U.S.C. § 1346(a)(2), seeking to enjoin the sale and to compel the return of his van. Vance challenges the legality of the warrantless searches and seizures occurring after Meck's inventory, contending that any evidence thus obtained cannot be used to establish probable cause for the forfeiture of his van. In addition, Vance asserts that he was not notified of the summary forfeiture proceedings and was thus deprived of property without due process of law.

The district court did not address the notice question. Although expressing serious doubt as to the legality of the DEA agent's warrantless searches of the closed containers and the taking of residue samples, the trial court found Officer Meck's inventory valid and the DEA agent's subsequent actions, "simply to interpret the meaning of what had been viewed theretofore by Officer Meck," also valid. The district court ordered the vehicle forfeited. We reverse and remand.

### Notice

Under 21 U.S.C. § 881, all conveyances, including vehicles, which "facilitate the transportation, sale, receipt, possession or concealment" of controlled substances which have been manufactured, distributed, or dispensed in violation of federal law are subject to forfeiture to the United States. Section 881(d) prescribes that the forfeiture proceedings are to be governed by the provisions for seizure, summary and judicial forfeiture, and condemnation of property applicable to violations of the customs laws.

The customs statutes, 19 U.S.C. §§ 1608 and 1609, require that a person asserting an interest in a seized vehicle valued at less than $10,000 must file a claim within 20 days after the first publication of the notice of seizure. Absent a timely claim, a seized vehicle will be forfeited to the United States, sold, and the proceeds will be deposited in the United States Treasury.

Vance maintains that because he was not notified that the government had commenced summary forfeiture proceedings, he was denied an opportunity to post the bond allowed by 19 U.S.C. § 1608. The posting of a section 1608 bond guarantees judicial resolution of the forfeiture.[1] In its answer,

---

1. The Ninth Circuit has ruled that the fifth amendment's due process clause forbids the federal government from denying opportunity for a judicial hearing to persons whose property has been seized and is subject to summary forfeiture solely because of inability to post bond. *Wiren v. Eide*, 542 F.2d 757 (9th Cir. 1976). Vance has not offered indigency as a

the government "submits that Plaintiff was properly notified by the Drug Enforcement Administration of the summary forfeiture of the 1973 Chevrolet Van and therefore he was not denied due process of law." However, the record contains no proof of the type and date of the notice to Vance advising of the summary forfeiture.[2]

During oral argument, counsel assured us that the procedures outlined in 19 U.S.C. § 1609[3] and 21 C.F.R. § 1316.75[4] were followed. Both the statute and the administrative regulation rely upon publication as the method of notifying a property owner of the impending summary forfeiture if a judicial hearing is not initiated. In view of the classification of the foregoing process as a civil proceeding *in rem, see, e.g., United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453 (7th Cir. 1980); *Castleberry v. Alcohol, Tobacco & Firearms Div. of Treasury Dept.,* 530 F.2d 672 (5th Cir. 1976), such notice historically has been deemed adequate.[5]

Quite another problem is presented by the extension of the fictive rule that forfei-

tures are in rem civil actions. The "civil nature of forfeiture proceedings will not be permitted to provide an avenue through which the fundamental rights of protection against unreasonable searches and seizures and self-incrimination can be frustrated." *Bramble v. Richardson,* 498 F.2d 968, 973 (10th Cir. 1974). Nor may the categorization of the forfeiture action serve to deny the claimant the seventh amendment right of trial by jury. *United States v. One Mercedes Benz 280S.* More pertinent to Vance's situation is the recognition by at least two federal courts that notice by publication, as provided by 19 U.S.C. § 1607 and 21 C.F.R. § 1316.75, does not afford due process "with respect to persons such as registered owners of seized vehicles whose identities and addresses are known or easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Wiren v. Eide,* 542 F.2d 757, 762 (9th Cir. 1976) (*citing Menkarell v. Bureau of Narcotics,* 463 F.2d 88 (3d Cir. 1972); *Jaekel v. United States,* 304 F.Supp. 993 (S.D.N.Y.1969)). On this sub-

---

reason for failing to post the bond required by 19 U.S.C. § 1608; accordingly, we do not consider this question.

**2.** Similarly, the government's demand that Vance's complaint should be dismissed "for the reason that he knowingly and willfully failed to pursue his administrative remedies after proper notice having been given to him to pursue the same" is not supported by the record.

**3.** 19 U.S.C. § 1609: "If no such claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the . . . vehicle . . . forfeited and shall sell the same at public auction . . . and shall deposit the proceeds of the sale, after deducting the actual expenses of seizure, publication and sale, in the Treasury of the United States."

**4.** The regulation reads:
(a) If the appraised value does not exceed $10,000, the custodian shall cause a notice of the seizure and of the intention to forfeit and sell or otherwise dispose of the property to be published once a week for at least 3 successive weeks in a newspaper of general circulation in the judicial district in which the seizure occurred.
(b) The notice shall: (1) Describe the property seized and show the motor and serial numbers, if any; (2) state the time, cause, and place of seizure; and (3) state that any

person desiring to claim the property may, within 20 days from the date of first publication of the notice, file with the custodian a claim to the property and a bond with satisfactory sureties in the sum of $250.

**5.** Moreover, as *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), declares, the absence of *pre-seizure* notice and opportunity for hearing does not deny due process in a forfeiture case. The Court's rationale for departing from the *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), decisions is justified on the grounds that a forfeiture is an " 'extraordinary' situation." 416 U.S. at 680, 94 S.Ct. at 2090.

Nevertheless, as the Ninth Circuit observed in *Wiren v. Eide,* "once seizure is accomplished, the justifications for postponement enumerated in *Calero-Toledo* evaporate . . . and due process requires that notice and opportunity for some form of hearing be accorded swiftly, and, in any event, prior to forfeiture." 542 F.2d at 761 n.6 (*citing Fuentes v. Shevin*; *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Fin. Corp.*).

ject, the Supreme Court has stated that notice must be " 'reasonably calculated' to apprise ... [the property owner] of the pendency of the forfeiture proceedings." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680 n.15, 94 S.Ct. 2080, 2090 n.15, 40 L.Ed.2d 452 (1974) (*quoting Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972)).[6]

We find particularly relevant, in light of the foregoing, the candid admissions by Officer Meck and the DEA agent that they knew Vance, knew the business he was engaged in, and knew his address. Despite this knowledge and despite the ease with which actual notice might have been effected, insofar as the record reflects, no effort whatever was made to inform Vance about the administrative forfeiture.

This extensive discussion of notice is impelled by the procedural posture of this action. Vance filed under the Tucker Act, seeking recovery of his van. In the course of the proceeding, which began as a hearing on the preliminary injunction to bar sale of the van, the district court addressed the lawfulness of the searches and seizures, and concluded by ordering the forfeiture of the van. At first glance, such a resolution appears inconsistent with our decision in *Castleberry*. In *Castleberry*, the owners of a Cadillac automobile seized by Treasury agents sued for a return of their vehicle. When the suit was filed, forfeiture proceedings had not been commenced. The district court ordered the vehicle released.

We began our review by noting the imperative nature of the threshold jurisdictional issue. After reflecting on the paucity of authority on the subject, we harkened back to the Second Circuit's decision in *In re Behrens*, 39 F.2d 561 (2d Cir. 1930), opin-

ing "that the legality of the seizure itself is to be determined in the forfeiture proceedings and not as an aspect of the ... [recovery] action." 530 F.2d at 675.

The *Castleberry* rule, however, has no effective application when the person whose property is seized has not been notified of the pending action. Vance seeks to convert the forfeiture process from an administrative to a judicial proceeding. While protesting that Vance had been aware of the forfeiture proceedings, the government agreed to the hearing on the merits, including a determination of the lawfulness of the searches. Further, the government sought and accepted the trial court's order of forfeiture and urges us to affirm that judgment.

■ With these considerations in mind, we conclude that under the circumstances of this case, although procedurally irregular, Vance's action is to be treated as a judicial forfeiture proceeding. This proceeding is composed of the government's request for forfeiture and Vance's opposition, which focuses on the challenge to the legality of the searches and seizures. In that posture, the disposition "on the merits" by the district court is consistent with *Castleberry* and the legality of the searches and seizures is an issue properly before the court. From that linchpin, we examine the validity of the warrantless searches.

### The Merits

■ Vance maintains that the searches of his van after Officer Meck's inventory were unlawful and any evidence thus obtained may not be used to establish the basis for a forfeiture.[7] We find Vance's contentions meritorious.

---

6. The constitutional standard is derived from *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). After reflecting on the classification of actions as "in rem," "quasi in rem," or "in the nature of a proceeding in rem," the *Mullane* Court held, "the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive ...." 339 U.S. at 312, 70 S.Ct. at 656. Thus was born the requirement of

notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657.

7. For the government to obtain a forfeiture in this type of case, it "must prove that the evidence establishes probable cause to believe that the vehicle was used to facilitate the transportation, concealment, or possession of the

■ As we noted recently: "The exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), applies in forfeiture proceedings, so probable cause for forfeiture cannot rest upon tainted evidence." *United States v. One 1979 Mercury Cougar XR–7*, 666 F.2d 228, 230 (5th Cir. 1982) (*citing One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *Jonas v. Atlanta*, 647 F.2d 580 (5th Cir. 1981)). We focus our examination on the warrantless searches of the van and its contents, including the opening of sealed containers and the taking of lab samples, while the van rested securely in *custodia legis*.

The government invites our attention to *United States v. Roberts*, 619 F.2d 379 (5th Cir. 1980), *United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978), and *United States v. Green*, 474 F.2d 1385 (5th Cir.), *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973), contending that these decisions authorize the actions of the DEA agent. According to the government, once Vance's privacy interests had been invaded legitimately by Officer Meck's inventory of the van, the subsequent viewings of the vehicle's contents by the DEA agent were permissible. This contention has a certain appeal, but our review convinces us that the cited decisions fail to support the government's position.

In *Green*, a deputy fire marshall was lawfully within an empty apartment investigating the cause of a fire. He happened upon what appeared to be counterfeit plates, possible evidence of the motive for the fire. The plates also might have been used for counterfeiting. The fire marshall called for a Secret Service agent who joined him at the apartment and identified the plates as counterfeiting devices. In rejecting the argument that the Secret Service agent's warrantless entry into the dwelling was unlawful, we stated:

> Once the privacy of a dwelling has been lawfully invaded, to require a second officer from another law enforcement agency arriving on the scene of a valid seizure to secure a warrant before he enters the premises *to confirm that the seized evidence is contraband* and to take custody of it is just as senseless as requiring an officer to interrupt a lawful search to stop and procure a warrant for evidence he has already inadvertently found and seized.

474 F.2d at 1390 (emphasis added) (*citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968)).

Similarly, in *Brand* we concluded that when one law enforcement officer justifiably entered a dwelling without a warrant, due to exigent circumstances, and observed hypodermic needles, marihuana butts, and an array of pills, other officers could enter the house without warrant authorization as well.[8] The later arrivals "may join their colleagues even though the exigent circumstances justifying the initial entry no longer exist." 556 F.2d at 1317.

Finally, in the *Roberts* case, deputy sheriffs arrived at an apartment to execute a

---

prohibited substance." *United States v. One 1975 Ford F100 Pickup Truck*, 558 F.2d 755, 756 (5th Cir. 1977) (*citing United States v. One 1969 Buick*, 493 F.2d 553 (5th Cir. 1974)). *See United States v. One 1978 Chevrolet Impala*, 614 F.2d 983 (5th Cir. 1980). According to *United States v. One 1971 Chevrolet Corvette*, 496 F.2d 210 (5th Cir. 1974), the necessary probable cause is a reasonable ground for belief of guilt supported by less than prima facie proof but more than mere suspicion.

8. We noted that the fourth amendment protects the citizen against invasion of privacy. Once that interest in invaded legally by an official of the State, the citizen has lost his reasonable expectation of privacy *to the extent of the invasion*. As this Court has held repeatedly, additional investigators or officials may therefore enter a citizen's property after one official has already intruded legally. *E.g. United States v. Green*, 5 Cir. 1973, 474 F.2d 1385, 1390, *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63; *United States v. Herndon*, S.D.Fla.1975, 390 F.Supp. 1017; *see Steigler v. Anderson*, 3 Cir. 1974, 496 F.2d 793, 797–98, *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277.

556 F.2d at 1317 (emphasis added).

search warrant in quest of a stolen television set. When the officers were admitted into the apartment they saw the television and "tables upon which telephones, calculators and papers were arranged." 619 F.2d at 380. In addition, football score sheets were observed next to one of the phones. Picking up the receiver, which was off the hook, the deputy heard a voice on the line ask for "Southern California minus 4." *Id.* Convinced that they had uncovered an illegal bookmaking operation, the deputies contacted the Federal Bureau of Investigation. FBI agents arrived at the apartment shortly thereafter and seized the gambling evidence. Applying the "plain view" doctrine enunciated in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), we held that the evidence of gambling was seized legally, albeit without warrant authorization.

The common thread in *Green, Brand*, and *Roberts* is two-pronged: the law enforcement officer initially entering the protected area was justified in doing so, and, while there, he observed items of an obviously illegal character. In such an instance, the officer could appropriately share the information with other law enforcement personnel bearing particular responsibility in that field. In those instances, warrants were not necessary to authorize the conduct of the later arriving officers.

In the case before us, only the first element in the *Green, Brand*, and *Roberts* formula exists. When Officer Meck conducted the inventory of the van, prior to impoundment, his warrantless entry into the van was lawful. *See South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). But, as he candidly testified, during the inventory process Officer Meck did not find any contraband or suspect any illegal activity in that regard. Four days elapsed between the inventory and the searches by the DEA agent. It was even later that the agent seized samples from the stove and closed containers. The subsequent intrusions were not justified by the earlier inventory. *Cf. Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (exhaustive warrantless search of an apartment was not justified because it was the scene of recent homicide).

As an alternative argument in support of the legality of the searches and seizures, the government suggests that the firemen actually unloaded and exposed the contents of the van. This bootstrapping is impermissible. Regardless, the DEA agent and chemist opened closed containers and took samples of residue. Purportedly, the chemical analysis of the residue reflected the presence of methamphetamine, although the record is devoid of any proof of this fact. Assuming its correctness, this evidence resulted from a warrantless search of property which was within the secured possession of the police. Assuming probable cause existed for the search, it is painfully apparent that exigent circumstances, sufficient to excuse the warrant requirement, simply did not exist.

■ Further, as relates to the plain view argument, we observed in *Roberts* : "We have held that the seizure of material cannot be justified by the plain view theory when the incriminating or evidentiary character of the material becomes known only after close inspection." 619 F.2d at 380 (*citing United States v. Robinson*, 535 F.2d 881 (5th Cir. 1976) (opening of brown paper bag and inspection of envelopes inside)). The plain view doctrine is limited to " 'inadvertent' discoveries of evidence by police officers acting within the scope of an otherwise justified intrusion." 619 F.2d at 381 (*quoting Coolidge v. New Hampshire*, 403 U.S. at 469, 91 S.Ct. at 2040). The opening of boxes, seizing of samples, and performing of chemical analyses cannot be considered inadvertent or casual. *See, e.g., Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

In concluding, we note that the conduct of the DEA agents in this case is not validated by the Supreme Court's recent decision in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Bel-*

*ton* stands for the proposition that when law enforcement officials legally arrest an occupant of an automobile the constitutionally permissible scope of a search incident to the arrest extends to the passenger compartment in which he was riding.[9] First, Gaunt was not arrested. In addition, the searches were performed four days *after* the van was inventoried and impounded, too remote in time and place to have been authorized by *Belton.* A warrant should have been obtained. *See Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

For the foregoing reasons we are compelled to hold that the government's probable cause, necessary to obtain a forfeiture, is predicated upon tainted evidence that should have been excluded. The forfeiture order of the district court is VACATED and the matter is REMANDED for further proceedings not inconsistent herewith.

---

**9.** The Court was careful to limit the force of its decision: "Because of this disposition of the case, there is no need here to consider whether the search and seizure were permissible under the so-called 'automobile exception.' *Cham-* *bers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543." 453 U.S. at 462 n.6; 101 S.Ct. at 2865 n.6.