896 F.2d 605
 UNITED STATES of America, Plaintiff, Appellee,
v.
PARCEL OF LAND AND RESIDENCE LOCATED THEREON AT 5 BELL ROCK
ROAD, FREETOWN, MASSACHUSETTS, Defendant, Appellee.
Appeal of Winifred H. SIENKEWICZ and William M. Sienkewicz,
Claimants, Appellants.
 No. 89-1353.
 United States Court of Appeals,
First Circuit.
 Heard Jan. 9, 1990.
Decided Feb. 15, 1990.
 
 David Shaughnessy with whom John Wall and Law Offices of John Wall, Boston, Mass., were on brief, for appellants.
 Jeffrey Robbins, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee, U.S.
 Before BREYER and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.
 BREYER, Circuit Judge.
 
 
 1
 Having engaged new counsel, William and Winifred Sienkewicz appeal from a judgment that forfeits, to the United States, their house and farm located at 5 Bell Rock Road, Freetown, Massachusetts. The relevant statutory provisions permit the federal government to obtain this property through forfeiture if the government shows probable cause to believe that the property was "used to facilitate the commission of" a serious drug crime, unless the owners then show (by a preponderance of the evidence) either (1) that the property was not used in this way or (2) that any such use was without the owners' "knowledge or consent." See 21 U.S.C. Sec. 881(a)(7); 19 U.S.C. Sec. 1615; United States v. $250,000 in United States Currency, 808 F.2d 895, 897 (1st Cir.1987); United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1281 (9th Cir.1983); United States v. One 1974 Porsche 911-S, 682 F.2d 283, 285 (1st Cir.1982).
 
 
 2
 The government obtained summary judgment primarily by pointing to certain documents that it submitted along with its complaint (documents that, in its view, clearly show the necessary "probable cause"), and by adding that the appellants had pointed to no potentially conflicting evidence or to any other potential evidence that might warrant judgment in their favor. See Fed.R.Civ.P. 56.
 
 
 3
 The key government documents included the following:
 
 
 4
 (a) a Massachusetts search warrant for 5 Bell Rock Road;
 
 
 5
 (b) the supporting affidavit of state police officer Alvin Alves;(c) a warrant return (with a police "supplementary report") showing that police had seized drug paraphernalia and 13.5 pounds of "dried vegetation" at 5 Bell Rock Road;
 
 
 6
 (d) a notarized police laboratory report showing that the "dried vegetation" was marijuana;
 
 
 7
 (e) an affidavit filed by federal drug agent Joseph Coons, in which Coons basically repeats the information contained in Alves' affidavit (and which indicates that Alves likely supplied this information to Coons).
 
 
 8
 The Alves affidavit (supporting the issuance of the state warrant) basically says the following:
 
 
 9
 (1) Alves is a fifteen-year veteran of the police force experienced in drug and undercover work.
 
 
 10
 (2) In December 1987 an anonymous caller told him that people who own a horse farm on Bell Rock Road were selling large quantities of marijuana and selling marijuana to jockeys who race at Suffolk Downs. He found from records that the Sienkewiczs' property included a farm and horses; he learned from a reliable acquaintance that they boarded horses for owners who race at Suffolk Downs.
 
 
 11
 (3) "On February 18, 1988, I [Alves] received communication from a confidential informant who has proven his reliability in the past as recent as within the last month which resulted in 5 separate drug raids which resulted in the arrests of 8 individuals and the confiscation of $7800 worth of Heroin (Class A), $1400 worth of cocaine (Class B), $300 worth of Valiums (Class C), $4000 worth of marijuana (Class D) and a total of $1150.00 in cash." (Emphasis added.)
 
 
 12
 (4) The confidential informant told him that the Sienkewiczs were selling large quantities of marijuana from their home on Bell Rock Road, that they pick up bales of marijuana in New York and Florida and transport it with hay and horses in their trailer, that within the past week the confidential informant personally was present at their house and saw Winifred Sienkewicz exchange, for cash, a baggie of marijuana (which she called "good grass"), that most of the marijuana is stored in pickle barrels in the cellar with smaller amounts kept in the kitchen, that Winifred had brought in two bales of marijuana in the last week, and that she had about a bale and a half left.
 
 
 13
 5) The confidential informant also said that Winifred drove a truck with registration number 76467. A check of that number revealed that it belonged to a truck that Winifred Sienkewicz owned.
 
 
 14
 The Sienkewiczs make two arguments on this appeal. First, they say that the judge should have suppressed all references to the material seized at their home. Second, they say that the record does not contain enough undisputed evidence of "probable cause" to warrant a grant of summary judgment. We do not find either argument legally sufficient to warrant setting aside the judgment.
 
 
 15
 * Suppression
 
 
 16
 The Sienkewiczs' suppression argument focuses upon paragraph three of Detective Alves' affidavit (which we have emphasized), in which he claims that his "confidential informant" was "reliable." Appellants say, using the language of Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), (1) that these statements are "false," (2) that they were "necessary to the finding of probable cause," and (3) that Alves made them "knowing[ ]" and "inten[ding]" them to be false or "with reckless disregard for the truth," id. at 155-56, 98 S.Ct. at 2676-77; that the warrant therefore does not meet the requirements of the federal constitution, id.; that the search is thus unlawful, id.; and that a court, in a civil forfeiture case, must suppress the fruits of such a search. See United States v. United States Currency $31,828, 760 F.2d 228, 230 (8th Cir.1985) (probable cause for forfeiture cannot be supported by evidence obtained in violation of the fourth amendment); Vance v. United States, 676 F.2d 183, 188 (5th Cir.1982) (same); see also One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). They also note that the district court did not conduct an evidentiary hearing on the truthfulness of the affidavit (where, for example, they might have examined Alves), and they ask us, at the least, to send the case back for such a hearing.
 
 
 17
 In our view, however, appellants have not made the minimal evidentiary showing necessary to obtain such a hearing. In Franks, the Supreme Court itself set forth the criteria that they must meet. It said,
 
 
 18
 There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.
 
 
 19
 Franks, 438 U.S. at 171, 98 S.Ct. at 2684 (emphasis added).
 
 
 20
 Appellants have pointed to three specific items to support their request for an evidentiary hearing, namely (1) an affidavit reporting some of what was said at the state court suppression hearing; (2) a tape recording of the state court suppression hearing; and (3) a state court order suppressing the fruits of the search. After examining the two written items and listening to the tape recording (as did the federal district court), we conclude that, whether we consider them separately or together, these items fail to meet Franks' criteria for an evidentiary hearing; a fortiori, they do not warrant suppression of the fruits of the search.
 
 
 21
 (a) The Brown affidavit. The appellants submitted an affidavit of their attorney William Brown. In the affidavit Brown says he spoke to Charles Hague, who represented appellants in the state proceedings, and Hague told him that
 
 
 22
 (1) at the state court suppression hearing, "Officer Alves testified that the confidential informants were not informants but were a Fall River Police Officer and a New Bedford Police Officer, respectively;" and
 
 
 23
 (2) he, Hague, had spoken to the two other officers "and neither said they [sic] provided the information which Officer Alves put in his affidavit in support of the search warrant."
 
 
 24
 In our view, the district court could properly decide to disregard this affidavit entirely for two reasons. First, the tape recording of the suppression hearing that the appellants provided the district court, and the transcript of that tape which they have appended to their brief in this court, show that the quoted statements in the first paragraph above are totally false. They show Detective Alves testifying that he verified the credibility of his informant by talking to a Fall River Police officer. Second, the affidavit is unreliable. It reports what attorney Hague told attorney Brown about what others said. Hague's own affidavit obviously would have presented far better, and more accurate, information; yet the record contains no reason why the appellants could not obtain it.
 
 
 25
 (b) The tape recording. Appellants say that the tape recording of the state suppression hearing demonstrates that Alves knowingly, or recklessly, misstated the truth when he swore (in the paragraph we have underlined) that his confidential informant "has proven his reliability in the past as recent as within the last month which resulted in 5 separate drug raids which resulted in the arrests of 8 individuals and the confiscation" of various amounts of drugs and money. Once again, we have reviewed the tape recording and the related transcript. Alves testified that the confidential informant (in February 1988) told him he had done these things, that he (Alves) read newspaper clippings providing details about these things, and that he (Alves) then called Detective Josephs of the Fall River Police Department, who told him that he (Josephs) had, indeed, personally used the confidential informant in (roughly speaking) the way that Alves indicated. Detective Josephs, who also testified at the suppression hearing, basically verified Alves' testimony.
 
 
 26
 We use words like "roughly speaking" and "basically" because neither police officer testified that Alves confirmed every detail of paragraph three with Josephs. Josephs, it seems, confirmed that the informant gave information leading to five drug raids and several arrests, but he did not confirm details about the number of people arrested or the quantities of drugs seized. We do not consider this significant, however, because Alves said nothing in the affidavit itself about the source of information in paragraph three. The affidavit says only that the informant had "proven his reliability ... in five separate drug raids" yielding eight arrests and certain quantities of drugs; Alves testified that he obtained this information from a police officer with first-hand experience and from confirming newspaper clippings. We see nothing in this testimony that would make the affidavit, in any significant way, untrue or misleading. See, e.g., United States v. Reed, 700 F.2d 638, 641 (11th Cir.1983) (upholding warrant even though affiant failed to specify the source of his information because a "reasonable person" would infer that the information came from fellow police officers); cf. United States v. Davis, 714 F.2d 896, 899 (9th Cir.1983) (invalidating warrant because affiant said he got information from an informant but actually got it from a fellow officer). Indeed, numerous courts have upheld warrants where the informant's reliability was established in a less specific and straightforward way than it is in paragraph three of Detective Alves' affidavit. See United States v. Watts, 540 F.2d 1093, 1096-98 (D.C.Cir.1976) (upholding warrant on facts nearly identical to facts of this case); United States v. Fleming, 566 F.2d 623, 625 (8th Cir.1977) (informant's reliability established by statement that informant "has informed on past occasions to the [sheriff's] office and the information in the past has always proven correct as to the illegal activity informed on by informant"); Watts, 540 F.2d at 1098 n. 12 (collecting similar cases).
 
 
 27
 In a second effort to find a misrepresentation in Detective Alves' affidavit, appellants argue that Officer Josephs testified that the raids in question took place in March 1987, that he said "Nothing [i.e., no raid] comes to mind in January or February of 1988," and that this testimony conflicts with Alves' statement that the informant had "proven his reliability ... as recent as ... the last month," i.e., in January or February 1988. The government responds, however, that what Officer Josephs in fact said was, "There was one [raid] between January and February of 1988." We have listened to the tape several times and, despite its poor sound quality, we agree with the government's version of Officer Josephs' testimony.
 
 
 28
 Even if we were to find, as appellants urge, that the tape's quality is too poor to determine Josephs' exact words, we still would have no reason to reverse the district court. The burden was on the appellants to show the need for a Franks hearing. See Franks, 438 U.S. at 171-72, 98 S.Ct. at 2684-85. The district court did not err when it decided that appellants did not meet this burden, because they produced only (1) a demonstrably false affidavit containing hearsay statements and (2) a low-quality tape recording that tends, on the whole, to confirm, rather than contradict, the truth of Detective Alves' statements.
 
 
 29
 (c) The state court motion. Appellants contend that the district court was required to suppress the evidence or conduct a Franks hearing because a state court had done so. This argument has two important flaws. First, appellants simply told the district court that state court proceedings against them had been "resolved" in their "favor" and presented a copy of their state court motion to suppress, which bore the annotation "motion allowed." Neither the papers filed nor the tape itself reveals why the state court suppressed the seized material. Other papers in this record indicate that the Sienkewiczs' argued strongly that the search violated state law, which, they pointed out (to the state court), differs in important ways from federal law. We held just recently, however, that neither logic nor law requires a federal court to suppress evidence seized in violation of state law. See United States v. One Parcel of Real Property, 873 F.2d 7, 8 (1st Cir.), cert. denied sub nom. Latraverse v. United States, --- U.S. ----, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989); United States v. Jorge, 865 F.2d 6, 10 n. 2 (1st Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 1762, 104 L.Ed.2d 198 (1989); see also United States v. Quinones, 758 F.2d 40, 43 (1st Cir.1985) ("It is well settled that in federal prosecutions evidence admissible under federal law cannot be excluded because it would be inadmissible under state law."); United States v. Chavez-Vernaza, 844 F.2d 1368, 1373-74 (9th Cir.1987) (same); United States v. Pforzheimer, 826 F.2d 200, 203-04 (2d Cir.1987) (same); United States v. Rickus, 737 F.2d 360, 363-64 (3d Cir.1984) (same).
 
 
 30
 Second, rules of "collateral estoppel" do not require federal courts in a federal forfeiture proceeding to apply a suppression decision that a state court reached in a state prosecution against the same party. This court has held that the state result will bind the federal government in such a case only if federal authorities "substantially control[led]" the state action or were "virtually represent[ed]" by the state prosecutor. United States v. Bonilla Romero, 836 F.2d 39, 43 (1st Cir.1987), cert. denied --- U.S. ----, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); see Montana v. United States, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) (holding the United States bound by a prior proceeding because it "plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel"). Otherwise, a federal court is free to make its own determination, just as a second court is normally free to redetermine an issue when one of the parties before it was neither a party, nor in "privity" with a party, in a first court proceeding. See Bonilla Romero, 836 F.2d at 43; see generally Restatement (Second) of Judgments Secs. 34-42 (1982). Here, after examining the record and hearing the tape recording of the state court suppression proceeding, we can find
 
 
 31
 no indication that [federal prosecutors] provided assistance or advice to the local authorities or at any time even discussed the matter. Federal prosecutors had no reason to believe that a [state] judge would be deciding any matters affecting a federal prosecution.
 
 
 32
 Bonilla Romero, 836 F.2d at 44. Consequently, we reach here the same result that we reached in that case. Since federal authorities were in no sense a party to the state court suppression proceedings, those proceedings did not legally require the federal court to conduct a Franks hearing or to suppress evidence.
 
 II
 Summary Judgment
 
 33
 We can find no legal basis for appellants' argument that the court should not have granted summary judgment against them. The government moved for summary judgment "with ... supporting affidavits," Fed.R.Civ.P. 56(a), which showed that the government was "entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c). Appellants' opposition to that motion simply pointed to the general denials contained in their answers to the government's complaint. The relevant federal rule, Rule 56(e), specifically says,
 
 
 34
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.
 
 
 35
 Fed.R.Civ.P. 56(e). Appellants did not "set forth specific facts showing that there [was] a genuine issue for trial," nor, for that matter, did they specifically "controvert[ ]" the statement of facts that the government submitted. See Mass.Dist.Ct.L.R. 18 (1986) (deeming material facts not "controverted" to be "admitted."). Thus, the rules require judgment for the government. See Micro-Sparc, Inc. v. Weinstock, 758 F.2d 790, 792 (1st Cir.1985); Packish v. McMurtrie, 697 F.2d 23, 27 (1st Cir.1983); 10A Wright, Miller & Kane Sec. 2739 n. 4 (collecting cases).
 
 
 36
 We do not see how the material that appellants filed in support of their "suppression" motion could make a difference. Even construed in the light most favorable to appellants, see Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir.1988), that material was too flimsy to support a reasonable inference that Detective Alves' entire affidavit was a fiction. See Bouchard v. Crystal Coin Shop, Inc., 843 F.2d 10, 13 (1st Cir.1988) ("In reviewing [a] grant of summary judgment we ... draw all reasonable inferences in favor of the nonmoving party") (emphasis added); Taylor v. Gallagher, 737 F.2d 134, 137 (1st Cir.1984) (holding that one party's "conclusory (mis)characterizations" of another's submissions will "not suffice to raise genuine issues of material fact that would preclude summary judgment"). Furthermore, the government pointed to other evidence of probable cause, such as the seizure of nearly fourteen pounds of marijuana, a scale, and close to one thousand dollars in small bills. We have held, see pp. 607-10, supra, that the district court need not have suppressed that other evidence. That evidence itself offers important confirmation of other statements in Detective Alves' affidavit, to the point where Detective Alves' statements in paragraph three of his affidavit are not "material." See Menard v. First Security Services Corp., 848 F.2d 281, 285 (1st Cir.1988) (summary judgment is precluded only "if there is a dispute 'over facts that might affect the outcome of the suit under the governing law' " (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986))); Mack v. Great Atlantic & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir.1989) (" 'If the [adverse party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted [against him].' " (quoting Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2510-11) (citations omitted)); Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975) ("The evidence manifesting the dispute must be 'substantial' " (citation omitted)), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).
 
 
 37
 Finally, appellants draw our attention to two other affidavits in which they personally swear that they "have at no time sold large quantities of marijuana and have never sold marijuana to any jockeys," that "large quantities of marijuana were not and are not being sold by" them, and that they "have never picked up or transported bales of marijuana or used [their] property as a 'cover.' " These affidavits were filed, however, more than two weeks after the district court granted the government's summary judgment motion, as part of a "motion for reconsideration." See Fed.R.Civ.P. 59(e) (motion to alter or amend the judgment). The district court has rather broad authority to grant or to deny such a motion. See Appeal of Sun Pipe Line Co., 831 F.2d 22, 25 (1st Cir.1987), (in considering a Rule 59(e) motion, a trial court has "substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material"); cert. denied sub nom. Sun Pipe Line Co. v. EPA, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988) see also Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 29-30 (1st Cir.1980) (" 'A defeated litigant cannot set aside a judgment ... because he failed to present on a motion for summary judgment all of the facts known to him that might have been useful to the court.' " (quoting 11 Wright & Miller Sec. 2858, at 173 (1973))). Here, moreover, appellants' use of the words "large quantities" leaves in doubt the extent to which they squarely controverted the government's claims. Given the vagueness and untimeliness of this evidence, we cannot say the district court acted unlawfully in denying the reconsideration motion.
 
 
 38
 For these reasons, the judgment of the district court is
 
 
 39
 Affirmed.