**PAKISTAN NATIONAL SHIPPING CORPORATION, Plaintiff,**

v.

**A CARGO OF 2,733.82 M/T OF HEAVY STEEL SCRAP, in rem, and the United States of America, the Department of the Treasury, the United States Customs Service, Joseph D'Alessio Company, Inc., Krung Thaibank Public Company Ltd., and Plansee Company, Ltd., in personam, Defendants.**

**CIV. A. No. H–00–1434.**

United States District Court,
S.D. Texas,
Houston Division.

March 30, 2001.

William M Jensen, Royston Rayzor Vickery & Williams, Houston, TX, for Pakistan National Shipping Corp, plaintiffs.

William Brad Howard, Office of U.S. Attorney, Rayburn Berry, Givens & Kelly, Houston, for U.S., Department of Treasury, U.S. Customs Service, A Cargo of 2,733.82 M/T of Heavy Steal Scrap in Rem, Approximately 2,917.54 Metric Tons of Military Vehicle Tracks, Joseph D'Alessio Company Inc., Krung Thaibank Public Company Ltd. and Plansee Co. Ltd., defendants.

## MEMORANDUM OPINION AND ORDER

HARMON, District Judge.

Pending before the Court is Defendants United States of America, Department of the Treasury, and United States Customs Service's Amended Rule 12(b)(1) and (b)(6) Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted and Rule 56(c) Motion for Partial Summary Judgment (Inst. No. 26). After

reviewing the record and the applicable case law, the Court concludes that Defendants' motion should be **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action for declaratory judgment, consolidated with a parallel judicial forfeiture proceeding, revolves around the export of alleged arms and munitions of war. The Arms Export Control Act, 22 U.S.C. § 2778, regulates the import and export of defense articles and defense services. The Act provides, in pertinent part:

> "[T]he President is authorized to control the import and the export of defense articles and defense services and to provide foreign policy guidance to persons of the United States involved in the export and import of such articles and services. The President is authorized to designate those items which shall be considered as defense articles ... for the purposes of this section and to promulgate regulations for the import and export of such articles .... The items designated shall constitute the United States Munitions List."

22 U.S.C. § 2778(a)(1). Moreover, Category VII of the United States Munitions List, titled "tanks and military vehicles," includes "military type armed or armored vehicles[,] ... [m]ilitary tanks, combat engineer vehicles, bridge launching vehicles, half-tracks and gun carriers [and][a]ll specifically designed or modified components and parts, accessories, attachments and associated equipment for the articles in this category ...." 22 C.F.R. § 121.1

On January 13, 2000, Plaintiff Pakistan National Shipping Corporation ("PNSC"), an agency of the Government of Pakistan, contracted with Defendant Joseph D'Alessio Company, Inc. ("D'Alessio") to carry a cargo of "heavy steel scrap" to Bangkok, Thailand. On January 19, 2000, the subject cargo was loaded aboard the M/V MULTAN, a vessel belonging to PNSC, in New Orleans, Louisiana. According to PNSC's Original Complaint, PNSC did not know that the cargo contained more than six million pounds of military combat vehicle tracks ("MVTs"), Category VII arms under the Arms Export Control Act. *See* 22 C.F.R. § 121.1. The cargo of MVTs allegedly included intact MVTs and parts of MVTs. Nonetheless, the boat cleared customs in New Orleans and sailed to Houston, Texas.

On February 9, 2000, the M/V MULTAN and its cargo left the port of Houston for foreign waters. One week later, as the M/V MULTAN was en route to its first port of call in Ulsan, Korea, Defendants United States of America, Department of the Treasury, and United States Customs Service (referred to collectively as "the United States") learned from an informant that the M/V MULTAN carried intact tank tracks covered under the Arms Export Control Act, even though neither the exporter D'Alessio nor the carrier PNSC had filed a Shippers Export Declaration ("SED") as required by 15 C.F.R. §§ 30.50 and 30.55(h)(1).[1] The United States then informed PNSC that the cargo was exported in violation of U.S. Customs laws be-

---

1. The International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Part 120, provides, *inter alia,* that (I) items on the United States Munitions list cannot be exported without a valid license from the U.S. State Department, *see* 22 U.S.C. § 2778(b)(2); 22 C.F.R. §§ 123.22, 127.1, and (ii) a shipper's SED must be filed with U.S. Customs with respect to Munitions List items, *see* 22 C.F.R. § 123.22.

Similarly, the Foreign Trade Statistical Regulations ("FTSR"), 15 C.F.R. Part 30, all shipments with a value exceeding $2,500 require an SED. The record reflects that the subject cargo's value exceeded $2,500.

cause it comprised arms and munitions of war.

Citing the lack of an SED filed on the shipment, United States issued a Notice to Mark and/or Notice to Redeliver on PNSC's cargo pursuant to 22 U.S.C. § 401, prohibiting the M/V MULTAN from delivering the subject cargo to Thailand and ordering it to discharge the cargo at the port of Houston. On April 28, 2000, PNSC brought the instant action, seeking a declaration that the United States had no authority to order the M/V MULTAN's return to Houston because the subject cargo did not contain military articles within the meaning of 22 U.S.C. § 401. PNSC's lawsuit also sought an injunction against the United States from seizing the M/V MULTAN or from instituting forfeiture proceedings against the M/V MULTAN should the vessel return to U.S. waters. Lastly, PNSC requested that the Court order the United States to rescind its Notice to Mark and/or Notice to Redeliver.

On May 30, 2000, the United States, pursuant to its notice of redelivery, seized the subject cargo. Thereafter, the United States notified PNSC of administrative forfeiture proceedings on the subject cargo. On June 12, 2000, PNSC filed its Second Amended Complaint, asserting an *in rem* claim against the subject cargo.

On September 13, 2000, the United States filed a judicial forfeiture proceeding against the cargo in Civil Action No. H–00–3181 in Judge Hittner's court. This Court consolidated that forfeiture action with the instant declaratory judgment action by Order dated October 20, 2000.

## II. DISCUSSION

In its present Amended Motion to Dismiss, the United States argues that the Court lacks subject matter jurisdiction to entertain PNSC's declaratory action, and that PNSC's Second Amended Complaint fails to state a claim for which relief can be granted. In addition, the United States moves for partial summary judgment on PNSC's contention that the United States's alleged negligence in allowing the cargo to leave the country should cause the United States's *custodia legis* lien to be trumped by PNSC's freight lien over the subject cargo.

■ The Court first addresses the United States's motion for dismissal premised on lack of subject matter jurisdiction. Here, the United States specifically argues that PNSC has "failed to meet its burden of showing that the [United States] waived [its] sovereign immunity in connection with the claims brought by PNSC in its second amended original complaint in Civ. No. H–00–1434." (Inst. 27 at 16.) Underlying the United States's position is the argument that PNSC is inappropriately attacking the basis of a pending judicial forfeiture action by securing a declaration from this Court that the cargo did not consist of items on the United States Munitions List.

■ In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001) (citing *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996)). Nevertheless, the Court must accept all factual allegations in the plaintiff's complaint as true. *See Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981).

■ It is well settled that, in the context of a civil forfeiture proceeding, "the proper method for recovery of property which has been subject to civil forfeiture is ... filing a claim in the civil forfeiture action." *United States v. Castro,* 883 F.2d

1018, 1019 (11th Cir.1989) citing *In re Seizure Warrant*, 830 F.2d 372, 374 (D.C.Cir. 1987). The law in the Fifth Circuit follows this general rule, for in the context of an administrative forfeiture proceeding by the government, the Fifth Circuit has held that "the proper place to litigate the legality of [a] seizure is in the forfeiture proceeding." *United States v. Hernandez*, 911 F.2d 981, 983 (5th Cir.1990) (citing *Castleberry v. Alcohol, Tobacco, & Firearms Div.*, 530 F.2d 672, 675 (5th Cir. 1976)); *Castleberry*, 530 F.2d at 675 (recognizing "that the legality of the seizure itself is to be determined in the forfeiture proceedings and not as an aspect of the present action"). As a result, "once the Government initiates forfeiture proceedings, the district court is divested of jurisdiction." *Ibarra v. United States*, 120 F.3d 472, 475–76 (4th Cir.1997).

Although PNSC acknowledges the general rule that the legality of a seizure by the United States may only be determined within the confines of the forfeiture proceeding, PNSC insists that the general rule is inapplicable in the instant case for two initial reasons. First, PNSC points out that it is not the original owner of the subject cargo, but rather, a third party asserting a lien based on a contract of carriage between it, the shipper, and the receiver. Second, PNSC emphasizes that it filed the present action with this Court before the forfeiture proceedings. PNSC, however, cites no case law to support its counterintuitive argument that the two reasons above eviscerate the general rule. The Court thus finds PNSC's two arguments to be without merit when placed against the great weight of prevailing case authority. *See Castro*, 883 F.2d at 1019 ("Defendant, without citing any supporting authority, argues that the institution of civil forfeiture proceedings *subsequent* to a Rule 41(e) Motion [for return of property] is not a defense to the Motion. We disagree." (emphasis in original)).

PNSC, however, nonetheless argues that subject matter jurisdiction exists by appealing to the Court's inherent equitable authority. *Cf. Castro*, 883 F.2d at 1020 (stating that, under Rule 41(e) of the Federal Rules of Criminal Procedure, the court was "not without the power to fashion a remedy under its inherent equitable authority"); *Castleberry*, 530 F.2d at 675 n. 5 ("Instances may arise in which due to extraordinary circumstances, manifest bad faith on the part of the government agents, or irreparable damages to the plaintiff, more immediate and drastic relief would be appropriate."). Specifically, PNSC insists that the M/V MULTAN and it did not violate any of the legal requirements pertaining to the filing of an SED, and that they are "innocent parties to this matter." (Pl.'s Reply to Mot. to Dismiss at 2.) PNSC moreover points out that the M/V MULTAN cleared customs in New Orleans, Lake Charles, and Houston under the watch of the United States Customs Service. To PNSC, the fact that "the vessel was in U.S. waters for over twenty days after loading of the subject cargo and the fact that the vessel was cleared three times by Customs [makes] clear that the Customs Service had more than sufficient time to enforce U.S. law prior to the vessel's departure for international waters." (Pl.'s Reply to Mot. to Dismiss at 4–5.) PNSC additionally contends that it was never informed of the United States's intent to forfeit the subject cargo; rather, the Customs Service represented to PNSC that its sole interest in the cargo was for use as evidence in a criminal investigation of the shipper, D'Alessio. Although the Court reads PNSC's allegations almost as a waiver argument, PNSC charges that the United States's actions evinced bad faith, giving rise not only to equitable considerations but also to the United States's waiver of sovereign immunity pursuant to 28 U.S.C. § 2674.

■ The Court rejects the argument because none of PNSC's allegations, even if true, eclipses the fact that 15 C.F.R. § 30.22 imposes on a carrier, such as PNSC, the duty to deliver a fully executed SED to the local Customs Director. As the Regulation states, "every departing carrier transporting merchandise as specified in § 30.20 ... shall deliver to the Customs Director at the port of exportation ... Shipper's Export Declarations prepared and signed by the exporters, or their agents, covering all the cargo for which such Shipper's Export Declarations are required by the regulations of this part." 15 C.F.R. § 30.22(a). Moreover, that the United States allowed PNSC the option of filing its SED late does not indicate any waiver or bad faith by the United States: 15 C.F.R. § 30.24 specifically allows a carrier to file the SED four days late. Contrary to PNSC's arguments, however, the explicit language of the Regulation mandates that § 30.22's requirement of an SED still applies in the context of a late filing under § 30.24. *See* 15 C.F.R. § 30.24. As a result, the Court finds that PNSC's proffered allegations of bad faith are without merit on their face. Thus, the "bad faith" or "extraordinary circumstances" contemplated by the Fifth Circuit in *Castleberry* do not apply to confer subject matter jurisdiction in PNSC's declaratory action asserted in Civ. No. H–00–1434.

As a second argument to dismiss, the United States takes the position that, because PNSC failed to follow the export control laws when it failed to file an SED, the United States Customs Service · was authorized to issue the Notice to Mark and/or to Redeliver.

Title 15 C.F.R. § 758.8(b) provides that "[w]here there are reasonable grounds to believe that a violation of the Export Administration Regulations has occurred ... with respect to a particular export from the United States ... the U.S. Customs Service may order any person in possession or control of such shipment, *including the exporting carrier*, to return or upload the shipment." 15 C.F.R. § 758.8(b) (emphasis added). Similarly, 19 C.F.R. § 113.64(f)(2) mandates that a carrier "will act, in regard to merchandise in its possession on the date the redelivery demand is issued, in accordance with any Customs demand for redelivery made within 10 days of Customs' discovery that there is reasonable cause to believe that the merchandise was exported in violation of the export control laws." 19 C.F.R. § 113.64(f)(2).

■ In the instant case, PNSC points to no authority that bestows on it the right to challenge the United States's Notice to Mark and/or to Redeliver in light of the parallel forfeiture proceeding currently pending before this Court. At its essence, PNSC's desired declaration, *i.e.*, that the United States's Notice to Mark and/or to Redeliver was invalid, merely challenges the propriety of the forfeiture. As discussed *supra*, such a challenge may not stand outside the confines of the forfeiture proceeding itself. That the record evinces PNSC's noncompliance with the export control laws further demonstrates the inappropriateness of PNSC's desired declaration. The Court thus exercises its discretion to dismiss it. *See Travelers Ins. Co. v. Louisiana Farm Bureau Fed., Inc.,* 996 F.2d 774, 778 (5th Cir.1993) ("It is now well-settled in the Fifth Circuit that a district court has discretion over whether to decide or dismiss a declaratory judgment action.").

The Court now addresses the United States's request for partial summary judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a

matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant. *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir.1990). If the nonmovant bears the burden of proof at trial, however, the movant for summary judgment need not support the motion with evidence negating the opponent's case. Instead, the movant may satisfy its burden by showing that there is an absence of evidence to support the non movant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the nonmovant to show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Hopper v. Frank,* 16 F.3d 92, 97 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir.1994)). Rather, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed. R. Civ. P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the nonmovant. *Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d

96, 98 (5th Cir.1996) (per curiam); *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990).

■ In its present motion for partial summary judgment, the United States argues that PNSC's desired declaration, that its freight lien is entitled to priority over the United States's *custodia legis* lien, fails as a matter of law. In any action involving the forfeiture of cargo for violation of United States Customs laws, 19 U.S.C. § 1613(a) controls the ranking of claims against the forfeited property as follows:

> (1) For the payment of all proper expenses of the proceedings of forfeiture and sale, including expenses of seizure, maintaining the custody of the property, advertising and sale ...;
>
> (2) For the satisfaction of liens for freight, charges, and contributions in general average, notice of which has been filed with the appropriate customs officer according to law; and
>
> (3) The residue shall be deposited in the general fund of the Treasury of the United States.

19 U.S.C. § 1613(a)(1), (2), and (3).

In support of its argument that its own *custodia legis* lien takes priority over PNSC's freight lien, the United States points not only to the Regulation above, but also to the fact that PNSC agreed in an International Carriers Bond to exonerate the United States for any claims arising from the clearance of one of its vessels from U.S. waters. Thus, the United States argues, assuming *arguendo* that the United States failed to exercise due care in granting clearance to the M/V MULTAN from the port in Reserve, Louisiana, PNSC is nevertheless contractually barred from asserting that its lien is entitled to priority over the United States's.

In response, PNSC dismisses the exoneration clause of the International Carriers Bond as a mere "industry norm" whose "cite, in small print, to a C.F.R. on the face

of the bond is [not] enough to exonerate the government from its own negligence." (Pl.'s Reply to Mot. to Dismiss at 13). PNSC supports this position by citing the Texas case of *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex.1987), which required that an agreement purporting to indemnify a party from the consequences of his own negligence needed to be written in specific terms within the four corners of the contract. Because the International Carriers Bond contains no explicit provision obligating PNSC to exonerate the United States for the latter's own negligence, PNSC claims that no exoneration of the United States is appropriate in the instant case.

■ The Court rejects PNSC's argument at the outset because it has failed to point to any aspect of the record demonstrating negligence on the part of the United States. However, even assuming that evidence for such negligence existed in the record, the Court nonetheless finds PNSC's reliance on *Ethyl Corp.* misplaced because "federal law governs the interpretation of the nature of the rights and obligations created by the Government bonds themselves." *Free v. Bland,* 369 U.S. 663, 669–670, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (citing *Bank of America Trust and Sav. Ass'n v. Parnell,* 352 U.S. 29, 34, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956)). Texas jurisprudence thus has no applicability to the present matter.

Moreover, the Court notes that PNSC checked off Part Three under Section II of the International Carriers Bond. That Part specifically references 19 C.F.R. § 113.64, which, in turn, provides that a carrier will exonerate the United States from any risk, loss, or expense arising out of the clearance of the carrier. *See* 19 C.F.R. § 113.64(e). Because contracts can incorporate statutory requirements to full effect, the Court finds that PNSC is contractually and statutorily bound to exonerate

the United States in accordance with the priorities of 19 U.S.C. § 1613(a)(1), (2), and (3). *See Koby v. United States,* 47 Fed. Cl. 99, 102 (2000) ("It is widely accepted that contracts can incorporate statutory and regulatory requirements."); *United States on Behalf of Dept. of Labor v. Insurance Co. of N. Am.,* 131 F.3d 1037, 1042 (D.C.Cir.1997) ("When a contract incorporates a regulation by reference, that regulation becomes a part of the contract for the indicated purposes as if the words of that regulation were set out in full in the contract."). Consequently, the Court holds that, pursuant to the applicable Code of Federal Regulations, the United States's *custodia legis* lien takes priority over PNSC's freight lien. Moreover, pursuant to contractual obligations freely entered into, PNSC is obligated to exonerate the United States from the clearance of the M/V MULTAN from U.S. waters.

## III. CONCLUSION

The instant case comprises two consolidated cases: a declaratory judgment action by PNSC and a forfeiture action by the United States. To the extent that the former seeks disposition of the merits of the latter, the Court has no subject matter jurisdiction. Moreover, applicable statutory authority, incorporated into the specific contractual terms of a bond, dictate that the United States's *custodia legis* lien enjoys priority over PNSC's freight lien, and that PNSC is obligated to exonerate the United States from the clearance of the M/V MULTAN from U.S. waters.

Accordingly, the Court

**ORDERS** that the United States's motion to dismiss and for summary judgment on the issues presented above is **GRANTED.**